Joseph PODVIN, et al., Respondents,

v.

The JAMAR COMPANY,
et al., Appellants,

A.H. Bennett Company,
et al., Defendants.

Nos. C0–02–1075, C1–02–1182,
C3–02–1183, C5–02–1184
and C7–02–1185.

Court of Appeals of Minnesota.

Jan. 14, 2003.

Michael R. Strom, Sieben, Polk, LaVerdiere, Jones & Hawn, P.A., Hastings, MN, for respondents.

Richard J. Leighton, Downs Reyelts Leighton Bateman & Hylden, Ltd., Duluth, MN, for appellants.

Considered and decided by
SHUMAKER, Presiding Judge,
LANSING, Judge, and MINGE, Judge.

## O P I N I O N

LANSING, Judge.

This appeal involves personal-injury litigation against two related corporations that voluntarily dissolved in 1985. The corporations moved to dismiss for insufficiency of process, arguing that service of process under Minn.Stat. § 5.25, subd. 5 (2000), could not be accomplished because the claims against the dissolved corporations were barred by Minn.Stat. §§ 302A.729, .781 (1984). The district court denied the motion to dismiss, holding that the personal-injury claims came within the exception created by Minn.Stat. § 302A.781 for liabilities incurred during dissolution proceedings. Because we conclude that the plain meaning of "liabilities incurred during dissolution proceedings" constrains its application to debts or obligations that a corporation is legally obligated to pay at the time of the dissolution proceedings, rather than unmatured tort or contract claims, we reverse.

## F A C T S

Walker Jamar Company (Walker Jamar), a closely held Minnesota corporation

established in 1913, sold and installed ventilation systems, industrial roofing, and insulation. Some of these products contained asbestos. Joseph Podvin and the other respondents whose cases are consolidated in this appeal (collectively referred to as Podvin) are individuals who were exposed to asbestos in their work at refineries, power plants, processing plants, and other facilities that used asbestos-containing products. They have contracted asbestos-related diseases and have sued, among others, Walker Jamar and the Jamar Company (the companies) for installing or distributing asbestos-containing products at their worksites.

Walker Jamar reorganized in 1981 following a favorable letter ruling from the Internal Revenue Service on the tax consequences of its proposed restructuring. Although the record is not fully developed on this point, the companies maintain that the purpose for the reorganization was to insulate the construction activities of the company from potential liabilities stemming from the distribution of Walker Pug Mill, a product unrelated to this litigation. The restructuring included the formation of a different company, the Jamar Company (Jamar I), to take over most of the business of Walker Jamar and a holding company, Norwalk, Inc., to hold the stock of both Walker Jamar and Jamar I.

Jamar I and Norwalk, Inc., filed their articles of incorporation with the Minnesota Secretary of State in February 1982. In May 1982, Jamar I assumed all assets and liabilities of Walker Jamar except those associated with the Walker Pug Mill product. Jamar I continued all other aspects of the original business, including ventilation, air conditioning, and insulation work.

In 1983, the president and chairman of the board of Jamar I decided to sell the companies and retire. Initially he was unable to negotiate a successful sale and decided to dissolve the companies at the end of the fiscal year on January 31, 1985. But shortly before the proposed dissolution date, Jamar I instead sold its assets, including its name, to API, Inc., an existing Minnesota company specializing in industrial insulation, piping, sheet metal work, and energy conservation construction and materials distribution. As part of the asset purchase agreement, Jamar I agreed to indemnify and hold harmless API against any known or unknown liability of Jamar I not specifically assumed by API in the asset purchase agreement. Although API purchased the right to use the name "The Jamar Company," the cash-for-assets transaction involved no sale of stock.

When API purchased the assets of Jamar I, Jamar I merged into the parent company, Norwalk. A few months later, Norwalk merged into Walker Jamar. Walker Jamar's only remaining operation, the production and marketing of the Walker Pug Mill, had been discontinued for economic reasons in 1983. On July 17, 1985, Walker Jamar filed its notice of intent to dissolve. On August 12, 1985, Walker Jamar filed its articles of dissolution in accordance with Minn.Stat. § 302A.733 (1984); the same day, the secretary of state issued Walker Jamar's certificate of dissolution. After this date only the new Jamar (Jamar II), operated by API, remained a going concern.

In December 2001, Podvin filed a complaint for negligence, products liability, and breach of warranty against Jamar II and Walker Jamar. The companies moved to dismiss the lawsuit for insufficiency of process, claiming that, as dissolved corporations, they could no longer be served. The trial judge appointed by the Minnesota Supreme Court to hear asbestos-related claims denied the motion to dismiss.

The companies then moved for dismissal in similar cases brought by additional plaintiffs under the "deeming" order provisions of the trial judge's case management order. That order permitted any party to file an identical motion in a subsequent case and declare that the motion was deemed denied, thus preserving the moving party's rights to appeal without repetitive rehearings of previously denied motions. The companies appealed in each case, and we consolidated those appeals.

## ISSUE

Did the district court err in denying the companies' motion to dismiss for insufficiency of process on the ground that Podvin's tort and contract claims were barred by Minn.Stat. §§ 302A.729 and .781 (1984)?

## ANALYSIS

■ As a preliminary matter, we address the companies' motion to strike the entire contents of Podvin's appendix on the basis that it comprises material not contained in the district court record of this case. Generally, documents may not be included in a party's brief unless they are part of the appellate record. *Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn.App. 1992), *aff'd*, 504 N.W.2d 758 (Minn.1993). Appellate courts may, however, consider cases, statutes, and other publicly available legal resources that were not presented to the district court. *Fairview Hosp. v. St. Paul Fire & Marine Ins. Co.*, 535 N.W.2d 337, 340 n. 3 (Minn.1995).

The first challenged document is a district court order from a previous asbestos-related case, and the second is a series of excerpts from a deposition of the president of Jamar I taken in 1988 in a separate asbestos-related lawsuit. The district court order is a public record and is properly included in the appendix. The excerpts from the president's deposition

were cited in Podvin's response to the companies' motion for summary judgment, which the companies included in their own appendix. In these limited circumstances the deposition excerpts may also be included in the appendix.

■ Sufficiency of process is a jurisdictional question that turns in this case on the interpretation of statutory provisions contained in Minn.Stat. § 5.25, subd. 5(b) (2000), and Minn.Stat. §§ 302A.729 and .781 (1984). A party may immediately appeal, as a matter of right, from the denial of a motion to dismiss for lack of jurisdiction. *See Hunt v. Nevada State Bank*, 285 Minn. 77, 88, 172 N.W.2d 292, 299–300 (1969). Jurisdiction is a legal question that we review de novo. *Kellar v. Von Holtum*, 605 N.W.2d 696, 700 (Minn.2000).

Minn.Stat. § 5.25, subd. 5(b), provides that if a business entity has voluntarily dissolved, or if a court has entered a decree of dissolution, service must be made according to the statute, "so long as claims are not barred under the provisions * * * that governed the business entity." In 1982, Walker Jamar amended its articles of incorporation, electing to be governed by chapter 302A of the Minnesota Statutes. In 1985, when API purchased the assets of Jamar I and took the name of The Jamar Company, Jamar II was incorporated under chapter 302A. Because both companies were governed by chapter 302A, we examine that statute as it existed in 1985 to determine whether the claims are barred, which in turn determines whether the companies may still be served. *See* Minn.Stat. § 5.25, subd. 5(b) (providing for service on dissolved business entity by serving secretary of state unless claims are barred under statutory provisions that governed that business entity).

The statute that governed the companies, Minn.Stat. § 302A.729, subd. 2 (1984), provided that claimants without notice of a

corporation's dissolution, who failed to initiate legal proceedings on their claims within two years after the date of filing the notice of intent to dissolve, were subject to the provisions of Minn.Stat. § 302A.781. Jamar I merged into Norwalk in January 1985, and Norwalk merged into Walker Jamar in June 1985. Walker Jamar filed its notice of intent to dissolve with the Minnesota secretary of state on July 17, 1985. Because Podvin did not serve the claim within two years after the companies' filing of the notice of intent to dissolve, the claim is subject to the provisions of Minn.Stat. § 302A.781.

Section 302A.781, subd. 1, provided that a person who is a creditor or claimant "at any time before, during, or following the conclusion of dissolution proceedings" who "has not initiated a legal * * * proceeding before the commencement of the dissolution proceedings, * * * [is] forever barred from suing on that claim, * * * except as provided in this section." Subdivision 2 of section 302A.781 provided that within one year after corporate articles of dissolution had been filed, a corporate creditor or claimant who could show good cause for not having previously filed a claim could apply to the court to allow a claim against the corporation to the extent of undistributed assets. Minn.Stat. § 302A.781, subd. 2. If the undistributed assets were insufficient to satisfy the claims, the claimant could apply to allow a claim against a shareholder in an amount equal to the distributions received by that shareholder. *Id.* The parties agree, however, that Minn. Stat. § 302A.781, subd. 2, does not control in this case because Podvin did not attempt to serve process to begin this lawsuit until 2001, fifteen years beyond the one-year period for asserting claims pursuant to that section.

■ Instead, Podvin asserts that subdivision 3 of section 302A.781, governing obligations incurred during dissolution proceedings, allowed service on the dissolved companies. This subdivision requires payment of all debts, obligations, and liabilities that are incurred during the dissolution proceedings before distribution of the assets:

> **Claims permitted.** All debts, obligations, and *liabilities incurred during dissolution proceedings* shall be paid by the corporation before the distribution of assets to a shareholder. A person to whom this kind of debt, obligation, or liability is owed but not paid may pursue any remedy against the officers, directors, and shareholders of the corporation before the expiration of the applicable statute of limitations.

Minn.Stat. § 302A.781, subd. 3 (1984) (emphasis added).

Podvin argues that because the claims in negligence, products liability, and breach of warranty constituted "liabilities incurred during dissolution proceedings," the statute did not bar the assertion of these claims, and the corporations could be served in this resulting lawsuit. The companies maintain, on the other hand, that the claims did not fall within the requisite statutory definition and therefore the statute precluded service of process on the dissolved corporations.

■ Statutory interpretation is a question of law, subject to de novo review. *Houston v. Int'l Data Transfer Corp.,* 645 N.W.2d 144, 149 (Minn.2002). Although both parties cite state district court cases in support of their positions, the application of subdivision 3 in this context is a case of first impression in Minnesota appellate courts. The Minnesota Supreme Court, however, has strictly construed the time limit for asserting claims against dissolved corporations under subdivision 2 (1992) (not materially different from the earlier version of subdivision 2). *Abad v.*

ISCO, Inc., 537 N.W.2d 620 (Minn.1995) (*Abad II*) (reversing *Abad v. ISCO, Inc.*, 534 N.W.2d 728, (Minn.App.1995) (*Abad I*)).

In *Abad II*, the supreme court reversed this court's earlier determination that merchant mariners who had been exposed to asbestos during their employment were entitled to a hearing to demonstrate whether they had "good cause" under subdivision 2 to file a late claim against a dissolved corporation. *See Abad I*, 534 N.W.2d at 731. The corporation, ISCO, formerly a Delaware corporation, had become a Minnesota corporation in 1990 and filed a notice of intent to dissolve the following month. The company had taken advantage of Minnesota's "no-notice" dissolution provisions, which allowed it to wait two years to file its articles of dissolution with the Minnesota secretary of state, rather than notify its creditors and seek expedited dissolution proceedings. *Id.* at 730 (citing Minn.Stat. § 302A.727, .7291 (1992)). Within one year after the articles were filed, the plaintiffs filed their complaint, alleging that they had good cause for the delayed filing because they had no previous notice of the dissolution proceedings. *Id.* The supreme court, in an order opinion, reinstated the district court's order for summary judgment in favor of the corporation. *Abad II*, 537 N.W.2d at 620. The court concluded that the plaintiffs had not demonstrated a genuine issue of material fact on whether "good cause" existed for their failure to sue during the two-year period from the filing of a notice of intent to dissolve under Minn.Stat. § 302A.7291 to formal dissolution.

Although subdivision 3, rather than subdivision 2, is at issue in this case, the rationale underlying a strict application of the bar of claims against dissolved corporations applies with equal or greater force to subdivision 2. Statutory construction must, in the first instance, focus on the plain meaning of "liabilities incurred" in subdivision 3. *See* Minn.Stat. § 645.16 (2002). "According to its plain meaning, the term 'incurred' requires an actual expenditure or liability for services rendered." *Nadeau v. Austin Mut. Ins. Co.*, 350 N.W.2d 368, 373 (Minn.1984) (interpreting the Minnesota No Fault Act for replacement service loss benefits); *see also Black's Law Dictionary* 771 (7th ed.1999) (defining "incur" as "to suffer or bring on oneself (a liability or expense)"). The definition of "liabilities" as "legal responsibilit[ies] * * * enforceable by civil remedy or criminal punishment" also limits the application of this term. *Black's Law Dictionary* at 925. As used in subdivision 3, the language "liabilities incurred" plainly applies to a debt or obligation that the obligor was legally obligated to pay at the time of the dissolution proceedings, rather than to an unmatured tort or contract claim.

The companies contend that regardless of the plain meaning of "liabilities incurred during dissolution," a 1991 legislative amendment that changed the statutory language to "[a]ll known contractual debts, obligations, and liabilities incurred in the course of winding up the corporation's affairs" clarified the meaning and unquestionably established that the phrase refers only to known liabilities incurred in the course of winding up the corporation's affairs. *See* Minn.Stat. § 302A.781, subd. 3 (2002). Although the argument has persuasive force, the 1991 session laws indicate that the relevant chapter includes both clarifying and modifying language. 1991 Minn. Laws Ch. 49, § 27. Thus we cannot definitively determine that this particular change is a clarification rather than a modification. *See Rural Am. Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 707 (Minn.1992) (holding that generally a

statute is not retroactive unless the legislature specifically so provides).

Even if we were to find the statutory language "liabilities incurred" ambiguous, and thus susceptible to interpretation to discern legislative intent, however, our conclusion that the statute barred the assertion of these claims would remain unchanged. The 1984 provision reflects legislative intent as expressed in the official comments to Minn.Stat. § 302A.781, which state that "[t]he goal of every dissolution * * * is to end the corporate existence as quickly and neatly as possible." Minn. Stat. Ann. § 302A.781 gen. cmt. (West 1985). Once a dissolving corporation has notice of all claims for which it is or may be held liable, it then "has the opportunity to pay or provide for payment of all legitimate claims. Prompt payment will speed the dissolution process to a timely close." *Id.*

We infer that the legislature intended to limit corporate liability under this provision to matured claims that corporations could identify during the dissolution process, so that payment could be made and the winding up of corporate affairs could proceed in an orderly and definite fashion. To hold otherwise would create lingering liability for claims arising after dissolution that could conceivably extend corporate accountability in perpetuity. *See Onan Corp. v. Indus. Steel Corp.*, 770 F.Supp. 490, 493–95 (D.Minn.1989) (holding, in contribution action to recover hazardous cleanup costs, that under Minnesota law, a manufacturer had no capacity to be sued after the expiration of three years following the date of filing its certificate of voluntary dissolution, indicating a need to balance legislative concern for the problem of corporate dissolution to avoid liability against the need to allow corporations to "die a natural death").

Podvin seeks to rely on this court's unpublished opinion, *Evert v. ACandS, Inc.*, 1994 WL 654532 (Minn.App. Nov. 22, 1994), in which we upheld a district court's order denying Jamar I's motion to dismiss a personal-injury asbestos claim because of insufficiency of service of process. *Id.* at *1. In considering whether the action had been properly initiated in 1993 by serving Jamar I's president and chairman, this court noted that the statutes contemplated suit against a dissolved corporation under subdivisions 2 and 3, but did not specify *how* a claimant could effect service of process. *Id.* at *2. Although this court in *Evert* concluded that the president was the most appropriate person to receive service on behalf of the dissolved corporation, it explicitly declined to review the issue of the statute of limitations on asbestos claims. *Id.* at *3.

Podvin alternatively argues that asbestos-related claims have been recognized as continuing torts, and that the claim did not accrue for purposes of the statute of limitations until Podvin contracted asbestosis in 1998. *See DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45, 52 (Minn.1982) (noting that because of unique character of asbestos-related deaths, wrongful death actions arising from those deaths do not accrue until either the manifestation of the fatal disease in a way causally linked to asbestos, or the date of death, whichever is earlier). Podvin relies on the final sentence of subdivision 3 (1984), which allowed a person "to whom this kind of debt, obligation, or liability is owed but not paid" to pursue any remedy against corporate officers, directors, or shareholders, "before the expiration of the applicable statute of limitations." But that provision does not apply in this case because Podvin has attempted to sue only the corporation itself, rather than any associated officers, directors, or shareholders.

Lastly, we observe that neither party has raised the issue of fraud or the issue of whether Jamar II, operated by API under the 1995 asset purchase agreement, may be held liable as a successor corporation to Jamar I. Under Minn.Stat. § 302A.661, subd. 4 (2002), the liability of a purchaser of assets exists only to the extent provided in the contract between the parties or as otherwise provided under Minnesota law. *See J.F. Anderson Lumber Co. v. Myers*, 296 Minn. 33, 37–38, 206 N.W.2d 365, 368–69 (1973) (listing factual bases necessary to establish successor liability).

■ "In the absence of fraud," a dissolved corporation should "be able to rely on the promise" of the dissolution statute that adhering to the statutorily defined procedures for dissolution and termination will protect against claims that accrue years after the dissolution. *Onan Corp.*, 770 F.Supp. at 495. The gravity of Podvin's circumstances cannot be gainsaid. But we are constrained by the plain meaning of "liabilities incurred" from allowing Podvin's claims to be considered as obligations incurred during dissolution proceedings.

## DECISION

The definition of "liabilities incurred" under Minn.Stat. § 302A.781, subd. 3 (1984), encompassed only debts or claims that a corporation was legally obligated to pay at the time of the dissolution process, rather than unmatured tort and contract claims. We therefore reverse the order of the district court denying the companies' motion to dismiss for insufficiency of process pursuant to Minn.Stat. § 5.25, subd. 5 (2000).

**Reversed; motion denied.**