GILLIAM v HI-TEMP PRODUCTS, INC
MULLETT v HI-TEMP PRODUCTS, INC
NELSON v HI-TEMP PRODUCTS, INC
TOMPKINS v HI-TEMP PRODUCTS, INC

Docket Nos. 238102, 238224, 238341, 238375. Submitted November 18, 2003, at Lansing. Decided December 18, 2003, at 9:05 A.M.

Lovall and Kansas Gilliam brought an action in the Wayne Circuit Court, Robert J. Colombo, Jr., J., against Hi-Temp Products, Inc., and others, seeking damages for injuries resulting from the use of, or exposure to, asbestos products sold by Hi-Temp. Hi-Temp moved for summary disposition, asserting that the claims were barred because they were filed more than one year after Hi-Temp published notice of its dissolution. The court denied the motion, finding, in part, that the claims were "contingent" within the meaning of MCL 450.1842a(3)(c), that the plaintiffs had established "good cause" under MCL 450.1851(2) for the delay in bringing their action, and that Hi-Temp had not made a complete distribution of its assets because there were unexhausted products-liability insurance policies. The court ruled that Hi-Temp's insurance carrier could be liable for any judgments the plaintiffs obtained because a dissolved corporation can be sued under MCL 450.1833 and MCL 450.1834, and because MCL 450.1851(2) applied to override the bar of MCL 450.1842a. Hi-Temp appealed by leave granted. (Docket No. 238102).

Similar actions were brought by other plaintiffs against Hi-Temp and others in the Midland, Bay, and Kalamazoo Circuit Courts and resulted in similar denials of Hi-Temp's motions for summary disposition. In an action brought by Charles R. and Phylliss Mullett, and others, in the Midland Circuit Court, the court, Paul Clulo, J., denied Hi-Temp's motion. Hi-Temp appealed by leave granted. (Docket No. 238224). In an action brought by Mary G. Nelson, personal representative of the estate of William E. Nelson, deceased, and another, in the Bay Circuit Court, the court, William J. Caprathe, J., denied Hi-Temp's motion. Hi-Temp appealed by leave granted. (Docket No. 238341). In an action brought by Theodore N. and Sharon Tompkins in the Kalamazoo Circuit Court, the court, William G. Schma, J., denied Hi-Temp's motion. Hi-Temp appealed

by leave granted. (Docket No. 238375). The appeals were consolidated.

The Court of Appeals *held*:

1. Hi-Temp properly published notice of its dissolution. The plaintiffs' claims are "contingent" within the plain meaning of MCL 450.1842a(3)(c), but they were not filed within one year of the publication of the notice of dissolution as required by MCL 450.1842a(3). An insurance policy is not an asset that Hi-Temp could distribute in the process of winding up its affairs after dissolution and is, therefore, not an undistributed asset of a corporation that has dissolved and distributed all assets capable of distribution. Therefore, MCL 450.1851(2) affords no relief from the bar of MCL 450.1842a even if the plaintiffs have "good cause" for not timely filing their claims. Because MCL 450.1855a plainly states that dissolved corporations need not provide for future contingent claims that will reasonably be barred by either MCL 450.1841a or MCL 450.1842a, Hi-Temp may assert the bar of MCL 450.1842a.

2. MCL 450.1842a bars claims that are contingent or based on an event occurring after the effective date of dissolution. MCL 450.1842a(3)(a), which bars a claim by a claimant who did not receive written notice under MCL 450.1841a, shows the Legislature's intent to bar claims that are both unknown and that arise after the dissolution of the corporation.

3. The expired third-party liability policies are not property that Hi-Temp could transfer in the process of liquidating its assets. The policies did not remain an asset of the corporation after existing claims were satisfied during liquidation and the deadline for filing future claims had expired. The policies are not an asset that would permit the conclusion that Hi-Temp has not made complete distribution of its assets within the meaning of MCL 450.1851(2). The orders of the trial courts must be reversed and the matters must be remanded to the trial courts for further proceedings consistent with the opinion of the Court of Appeals.

Reversed and remanded.

1. CORPORATIONS — DISSOLUTION — CLAIMS AGAINST CORPORATIONS.

Claims against a dissolved corporation that has published notice of dissolution are generally barred unless the claims are brought within one year of the publication of the notice, even where the claims are latent, unknown, or could not reasonably be brought within one year of notice of the corporate dissolution (MCL 450.1842a).

2. CORPORATIONS — DISSOLUTION — LIABILITIES — DEBTS.

A dissolving corporation, before distributing its assets to shareholders, must make provision for its debts, obligations, and liabilities; the corporation must make a reasonable estimate and provide for those debts, obligations, and liabilities anticipated to arise after the effective date of dissolution but need not provide for any debt, obligation, or liability that is or is reasonably anticipated to be barred under MCL 450.1841a or MCL 450.1842a (MCL 450.1855a).

3. CORPORATIONS — DISSOLUTION — ASSETS — INSURANCE POLICIES.

A liability insurance policy may be an asset of a viable corporation or of a corporation in the process of winding up its affairs after dissolution, but is not an asset of a dissolved corporation that has distributed all its assets capable of distribution where the statutory period during which claims may be filed against a dissolved corporation has expired (MCL 450.1851[2]).

*Goldberg, Persky, Jennings & White, P.C.* (by *James J. Bedortha* and *Lane A. Clack*), for the appellees.

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish*), for the appellant.

Before: WHITBECK, C.J., and CAVANAGH and MARKEY, JJ.

MARKEY, J. In each of these consolidated appeals, defendant Hi-Temp Products, Inc., appeals by leave granted the trial court's order denying its motion for summary disposition. Hi-Temp argues that plaintiffs' claims of asbestos-related personal injury are barred by MCL 450.1842a[1] because they were filed beyond the one-year period allowed for the filing of claims after Hi-Temp published notice of its dissolution. We agree and reverse.

---

[1] MCL 450.1842a is § 842a of the Business Corporation Act (BCA), MCL 450.1101 *et seq.* Further reference to the BCA will be by section number.

I. SUMMARY OF FACTS AND PROCEEDINGS

Hi-Temp sold asbestos products. Many individuals have claimed that their exposure to Hi-Temp's products caused asbestos-related diseases. They have sued Hi-Temp frequently and continuously since the mid-1980s. In 1992, Hi-Temp ceased active business operations. Its sole shareholder resolved on October 8, 1993, that Hi-Temp be dissolved and its assets distributed. On October 14, 1993, Hi-Temp filed a certificate of dissolution pursuant to subsection 831(b). The Bureau of Corporations and Securities stamped the certificate filed on October 25, 1993, thereby making the dissolution effective. Subsection 131(3); subsection 804(7); *Freeman v Hi Temp Products, Inc,* 229 Mich App 92; 580 NW2d 918 (1998). Hi-Temp averred that it made a "complete distribution of its corporate assets" by selling its inventory and equipment, collecting its receivables, paying bills, and making provisions for the payment of its outstanding liabilities. It is undisputed that Hi-Temp made a final distribution of assets in the amount of $9,571.99. But it is also undisputed that from 1978 through 1985 Citizens Insurance Company provided Hi-Temp with products-liability insurance coverage, and that the limits of the policies have not been exhausted.

Hi-Temp published a notice of dissolution in the Oakland Press on October 25, 1993,[2] July 3, 1996, and October 20, 1998. Hi-Temp also gave notice of its dissolution through its counsel directly to plaintiffs'

---

[2] This Court held in *Freeman, supra* at 100, that publication of notice on the date of dissolution was ineffective to invoke the one-year period after which claims would be barred by subsection 842a(3) because publication did not occur " '*after* the effective date of dissolution' " as required by subsection 1 of § 842a (emphasis added).

counsel on October 15, 1993, and October 21, 1998. MCL 450.1842a(3) essentially provides that all claims against a dissolved corporation are barred unless "the claimant commences a proceeding to enforce the claim against the dissolved corporation within 1 year after the publication date . . . ." Plaintiffs' actions alleging personal injury or death as a consequence of the use of, or exposure to, asbestos in Hi-Temp's products were filed after October 21, 1999. In all cases, Hi-Temp moved for summary disposition, asserting the statutory bar to claims filed more than one year after publication of notice in accordance with § 842a. Plaintiffs argued that they had shown good cause for not presenting their latent claims earlier and that Hi-Temp's insurance coverage was an undistributed asset within the meaning of subsection 851(2), an exception to § 842a.

MCL 450.1851(2) provides: "For good cause shown, and so long as a corporation has not made complete distribution of its assets, the court may permit a creditor who has not delivered his or her claim or commenced a proceeding to enforce his or her claim within the time limits provided in sections 841a and 842a to file the claim or to commence a proceeding within the time as the court directs." Plaintiffs also argued that Hi-Temp was estopped from invoking § 842a because Hi-Temp had failed to provide for payment of its obligations as required by § 855a. In each of these cases, the trial court rejected Hi-Temp's argument and denied summary disposition for the reasons we hereafter summarize.

In Docket No. 238102 (*Gilliam*), Wayne Circuit Judge Robert J. Colombo, Jr., first rejected plaintiffs' argument that Hi-Temp was estopped by § 855a to assert the bar of § 842a because § 855a specifically

provides: "Provision need not be made for any debt, obligation, or liability that is or is reasonably anticipated to be barred under section 841a or 842a." Judge Colombo reasoned that the Legislature intended § 842a to bar future claims against dissolved corporations, citing *Freeman, supra* at 96. Judge Colombo further reasoned that plaintiffs' claims were "contingent" within the meaning of subsection 842a(3)(c) because asbestos-related diseases may take years to manifest after exposure to asbestos fibers, or may never occur.

Having concluded that § 842a would otherwise bar plaintiffs' claims, Judge Colombo next considered whether under subsection 851(2) "good cause" existed for plaintiffs' delay, and whether Hi-Temp had not completely distributed its assets. Judge Colombo determined that plaintiffs had established "good cause" because plaintiffs could not bring suit until their claims accrued upon discovery, or when plaintiffs should have with reasonable diligence discovered their asbestos-related disease and discovered the causal connection between their disease and Hi-Temp's alleged breach of duty. *Moll v Abbott Laboratories*, 444 Mich 1, 16; 506 NW2d 816 (1993); *Larson v Johns-Manville Sales Corp*, 427 Mich 301; 399 NW2d 1 (1986).

Regarding whether Hi-Temp had distributed all its assets, Judge Colombo found most persuasive *Nat'l Union Fire Ins Co of Pittsburgh, PA v City Savings FSB*, 28 F3d 376 (CA 3, 1994), which held that for the purposes of 12 USC 1821(d)(3), (d)(13)(D)[3] an insur-

---

[3] Federal law requires exhaustion of administrative proceedings before a federal court has jurisdiction over claims to assets of any institution for which the Resolution Trust Corporation is appointed the receiver.

ance policy was an "asset" of an insolvent financial institution. The *Nat'l Union* court applied the common legal definition of "asset" from Black's Law Dictionary (6th ed, 1990) to conclude that the policies of insurance held by the insolvent bank, on which the Resolution Trust Corporation, as receiver, was attempting to collect $152 million in losses from fraudulent conduct of bank employees, were "assets" of the bank for purposes of 12 USC 1821(d)(13)(D). *Nat'l Union, supra* at 384. Relying on *Nat'l Union,* Judge Colombo ruled "a corporation has not made a complete distribution of its assets when it has an unexhausted insurance policy." Accordingly, Judge Colombo concluded that Hi-Temp's insurance carrier could be liable for any judgments plaintiffs obtained because a dissolved corporation can be sued under Michigan law,[4] and subsection 851(2) applied to override the bar of § 842a.

In Docket No. 238224 *(Mullett)*, Midland Circuit Judge Paul Clulo also denied Hi-Temp's motion for summary disposition. Judge Clulo concluded:

> The court will not repeat the grounds for its decision, which have been stated and restated in a number of Circuit Court decisions in Michigan in recent years. Suffice it to say that the court finds the rationale of the judges in *Ernest v Duro Supply,* 96-012998-NP-5, Saginaw County Circuit Court (8/2/2000), and *Miller v Alexander-Stafford Corporation,* 99-05792-NP, Gratiot County Circuit Court (12/4/2000), to be persuasive. In addition, this court also finds that the decision in *Williams v Grossman,* 409 Mich 67 [293 NW2d 315] (1980), is persuasive on the issue of whether an insurance policy is an undistributed asset thus implicating MCL 450.1851(2).

---

[4] MCL 450.1833; MCL 450.1834.

In *Ernest*, a case with a fact situation similar to the instant cases, Saginaw Circuit Judge Leopold P. Borrello found that § 842a did not apply. Judge Borrello reasoned that the purpose of § 842a, to require creditors reasonably expected to file their claims against a dissolved corporation to do so within one year, would not be furthered when the plaintiffs did not realize that their claims existed. For this point, Judge Borrello relied on this Court's finding that the purpose of § 842a's predecessor, § 842, was " 'to compel all creditors who may reasonably be expected to file their claims to do so within the prescribed time and to . . . [bar] . . . the claim upon failure to do so.' " *In re Dissolution of Esquire Products Int'l, Inc (On Remand)*, 145 Mich App 106, 113-114; 377 NW2d 356 (1985), quoting Commissioner's Comment, 1972 Amendments to NJ Rev Stats § 14A:12-13. Second, Judge Borrello, citing *Larson, supra*, found that applying the bar of § 842a would not serve the purposes of a statute of limitations, which are: "1) to encourage plaintiffs to pursue claims diligently, and 2) to protect defendants from having to defend against stale or fraudulent claims." *Larson, supra* at 311. Judge Borrello reasoned that these purposes were not furthered by barring the plaintiffs' asbestos claims because "the plaintiffs had no idea they even had" a claim. Moreover, Judge Borrello found that applying § 842a would undermine the discovery rule applied to statutes of limitations in products-liability asbestos cases. *Moll, supra* at 5; *Larson, supra* at 311. Third, Judge Borrello found that it would be "patently unfair" or "inherently unfair" to apply § 842a to bar the plaintiffs' claims because it would have been impossible for the plaintiffs to have timely filed their complaints.

Thus, Judge Borrello did not address subsection 851(2).

In *Miller*, the other circuit court decision relied on by Judge Clulo, Gratiot Circuit Judge Randy L. Tahvonen concluded that § 842a did not apply to bar the plaintiffs' asbestos claims. Judge Tahvonen concluded that a latent asbestos claim simply did not come within the meaning of "contingent" as used in subsection 842a(3), which provides that "the claim of each of the following claimants is barred" one year after proper notice: "A claimant whose claim is contingent or based on an event occurring after the effective date of dissolution." MCL 450.1842a(3)(c). Judge Tahvonen reasoned:

> I don't think the word contingent in section 842 [sic] can be read as barring claims which are neither known to the claimant nor which should be known to the claimant. The claimant has no reason to know of the claim, no reasonable person using an objecting [sic] test in the claimant's position would understand the claim exists. It seems to me that that is not a contingent claim.
>
> . . . A claim the existence of which is hidden, because the development of the cancer doesn't manifest itself until six months after the period otherwise applicable. That is a latent claim. I don't think contingent and latent are the same, and my view is if the Legislature wanted to bar completely latent claims, it, perhaps, could have tried to do so. [*Miller*, *supra*, hearing on motion for summary disposition, December 4, 2000, pp 23-24.]

Although Judge Tahvonen did not find an insurance policy to be an undistributed asset, the court nonetheless concluded that even if § 842a barred the plaintiffs' claims, § 851 "is designed and intended to deal with good cause for filing claims after that period of

time, and it seems to me that these latent claims fit that bill." *Miller, supra* at 25.

In Docket No. 238341 (*Nelson*), Bay Circuit Judge William J. Caprathe denied Hi-Temp's motion for summary disposition "for the reasons stated on the record." Judge Caprathe adopted the opinion of Judge Lawrence M. Bielawski in *Davenport v Duro Supply Co*, No. 00-4005-NP-B, Bay Circuit Court, May 10, 2001, in which Judge Bielawski found that subsection 851(2) applied to the circumstances these consolidated appeals present. Judge Bielawski noted that this Court has held that § 851 "manifests an intent to repose considerable discretion in the court to control the determination of claims by creditors." *Esquire Products, supra* at 115. Further, the court stated that the plaintiff in *Davenport* had "good cause" because he had no claim, i.e., no manifestation of asbestos-related disease, before the period provided by § 842a had expired. Judge Bielawski also relied on Judge Borrello's reasoning in *Ernest, supra,* and Judge Tahvonen's reasoning in *Miller, supra.* By analogy to *Williams, supra,* Judge Bielawski also determined the insurance policy involved to be an undistributed asset. Judge Bielawski concluded "at the very minimum, a question of fact still exists regarding the 'undistributed asset' prong of Sec. 851." Opinion and order denying summary disposition, *Davenport, supra* at 9. Judge Bielawski also found that a question of fact remained for trial regarding whether the defendant had complied with its duty under § 855a to provide for foreseeable future claims.

In Docket No. 238375 (*Tompkins*), Kalamazoo Circuit Judge William G. Schma denied Hi-Temp's motion on the basis of a ruling the court had issued denying a similar motion by Duro Supply. Judge Schma ruled

that the issues concerning whether plaintiffs had good cause under subsection 851(2) for not bringing their claims within one year of the dissolution because their asbestos-related disease had not yet manifested itself and whether Hi-Temp's insurance policy was an asset not completely distributed on dissolution were genuine issues of material fact that precluded summary disposition.

We granted leave to appeal on May 9, 2002, and ordered these appeals consolidated on July 23, 2002.

## II. STANDARD OF REVIEW

This Court reviews de novo the interpretation and application of statutes as questions of law. *Abbott v John E Green Co*, 233 Mich App 194, 198; 592 NW2d 96 (1998); *Freeman, supra* at 96. Also, this Court reviews de novo a trial court's grant or denial of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

In these consolidated appeals, although Hi-Temp moved for summary disposition under MCR 2.116(C)(3), (7), (8), and (10), its argument on appeal implicates only subrule C(7) (the claim is barred because of immunity granted by law), or C(10) (except with regard to damages, there is no genuine issue concerning any material fact and the moving party is entitled to partial or full judgment as a matter of law). Under MCR 2.116(C)(7), a plaintiff's pleadings are accepted as true and construed in the plaintiff's favor. *Abbott, supra.* But, the parties may submit documentary evidence that the trial court must consider in deciding whether a material issue of fact exists and, if not, whether the claim is barred by immunity granted by law. *Id.; Maiden v Rozwood*, 461

Mich 109, 119-120; 597 NW2d 817 (1999). Here, because the material facts relevant to Hi-Temp's motion are not disputed, the issue becomes whether Hi-Temp is entitled to judgment as a matter of law when those facts are applied to the relevant statutes. MCR 2.116(C)(7) and (C)(10); *Abbott, supra; Warren Consolidated Schools v W R Grace & Co*, 205 Mich App 580, 583; 518 NW2d 508 (1994).

When interpreting a statute, this Court's primary obligation is to ascertain and give effect to the intent of the Legislature. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003); *Freeman, supra* at 96. This Court must presume the Legislature intended the meaning clearly expressed and must enforce a statute as written. *Gladych, supra; Freeman, supra* at 96. The fact that a statute appears to be impolitic, unwise, or unfair is not sufficient to permit judicial construction. The wisdom of a statute is for the determination of the Legislature and the law must be enforced as written. *Smith v Cliffs on the Bay Condo Ass'n*, 463 Mich 420, 430; 617 NW2d 536 (2000). But if an ambiguity requires interpretation, the statutory language should be construed reasonably, keeping in mind the purpose of the act. *Draprop Corp v Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001).

### III. ANALYSIS

We conclude that plaintiffs' claims are barred when the plain language of § 842a is applied to the undisputed facts of these consolidated appeals. Hi-Temp properly published notice of its dissolution. Plaintiffs' claims are "contingent" within the plain meaning of subsection 842a(3)(c), but they were not filed within

one year of publication of notice of dissolution as required by subsection 842a(3). An insurance liability policy is not an asset that a corporation could distribute in the process of winding up its affairs after dissolution. Therefore, it is not an undistributed asset of a corporation that has dissolved and distributed all assets capable of distribution. Accordingly, subsection 851(2) affords no relief from the bar of § 842a even if plaintiffs have "good cause" for not timely filing their claims. Finally, because § 855a plainly states that dissolved corporations need not provide for future contingent claims that will reasonably be barred by either § 841a or § 842a, Hi-Temp may assert the bar of § 842a.

MCL 450.1842a governs publication of notice of corporate dissolution and provides:

(1) A dissolved corporation may also publish notice of dissolution at any time after the effective date of dissolution and request that persons with claims against the corporation present them in accordance with the notice.

(2) The notice must be in accord with both of the following:

(a) Be published 1 time in a newspaper of general circulation in the county where the dissolved corporation's principal office, or if there is no principal office in this state, its registered office, is or was last located.

(b) State that a claim against the corporation will be barred unless a proceeding to enforce the claim is commenced within 1 year after the publication date of the newspaper notice.

(3) *If the dissolved corporation publishes a newspaper notice in accordance with subsection (2), the claim of each of the following claimants is barred* unless the claimant commences a proceeding to enforce the claim against the dissolved corporation within 1 year after the publication date of the newspaper notice:

(a) A claimant who did not receive written notice under section 841a.

(b) A claimant whose claim was timely sent to the dissolved corporation but not acted on.

(c) *A claimant whose claim is contingent or based on an event occurring after the effective date of dissolution.*

(4) Notwithstanding subsection (3), a claimant having an existing claim known to the corporation at the time of publication in accordance with subsection (2) and who did not receive written notice under section 841a is not barred from commencing a proceeding until 6 months after the claimant has actual notice of the dissolution. [Emphasis supplied.]

By its plain language, § 842a generally bars claims against a dissolved corporation that has published notice of dissolution unless the suits are brought within one year of publication. This Court has acknowledged that the purpose of the statute is " 'to compel all creditors who may reasonably be expected to file their claims to do so within the prescribed time and to . . . [bar] . . . the claim upon failure to do so.' " *Esquire Products, supra* at 113-114, quoting Commissioner's Comment, 1972 Amendments to NJ Rev Stats § 14A:12-13. We do not agree with Judge Tahvonen's distinguishing latent or hidden claims from contingent claims. Instead, we agree that Judge Colombo correctly read and applied subsection 842a(3)(c) to conclude that plaintiffs' claims were contingent because they were dependent on a future event or they were "based on an event occurring after the effective date of dissolution." The contingency or the event was the manifestation of an asbestos-related illness. *In re Estate of Jeffers*, 272 Mich 127, 136; 261 NW 271 (1935).

Moreover, § 842a is not a statute of limitations; it is part of a legislative scheme intended to avoid the con-

sequences of corporate dissolution at common law. "Statutes relating to the time for bringing an action against a dissolved corporation are not statutes of limitation, but rather corporate survival statutes." *Missouri ex rel Nat'l Super Markets, Inc v Dowd*, 1 SW3d 595, 598 (Mo App, 1999) (applying the six-month period of MCL 450.1841a for filing claims against a dissolved Michigan corporation to bar a Missouri worker's compensation claim). At common law, upon dissolution of a corporation, "there is no one to serve, because, in law, a dissolved corporation is a dead person, so much so that, in the absence of statute and revival, even pending actions by or against it would abate." *US Truck Co v Pennsylvania Surety Corp*, 259 Mich 422, 426; 243 NW 311 (1932). Thus, an action brought against a corporation that then dissolves would, as a matter of law, be abated in the absence of MCL 450.1834(f), which provides, "An action brought against the corporation before its dissolution does not abate because of the dissolution." *Esquire Products, supra* at 110-111. So-called "survival statutes" extend the life of a corporation after dissolution to permit actions by or against the dissolved corporation for a specified period. *Id.* at 110, 112 n 3; *Blankenship v Demmler Mfg Co*, 89 Ill App 3d 569, 574; 411 NE2d 1153 (1980). Or they may be statutes of repose that extinguish untimely causes of actions before they accrue. See, e.g., *O'Brien v Hazelet & Erdal*, 410 Mich 1, 15; 299 NW2d 336 (1980), and *Abbott, supra* at 200, both applying MCL 600.5839(1).

Under the BCA, subject to § 833, or as otherwise provided by court order, a dissolved corporation may sue or be sued in its own name and may carry on bus-

iness as if not dissolved. MCL 450.1834; *Freeman, supra* at 96. But § 833 limits a dissolved corporation's activities to winding up its business affairs and liquidating its assets. Reading §§ 833, 834, 841a, 842a, and 851 of the BCA together, it becomes clear that the Legislature has provided for the orderly winding up of corporate affairs, including the liquidation and distribution of assets, and which may include court supervision, particularly when the liabilities of the corporation exceed its assets. *Freeman, supra* at 100. This Court has held that "the primary purpose of the provisions relating to dissolution is to protect the rights of all creditors by providing for the payment of debts 'ratably,' and to prevent individual creditors from procuring a preferment by pursuing independent action to the detriment of other creditors." *Esquire Products, supra* at 112. Thus, § 851 of the BCA "manifests an intent to repose considerable discretion in the court to control the determination of claims by creditors." *Esquire Products, supra* at 115. Section 842a is not a statute of limitations. Subsection 842a provides "the exclusive remedy for creditors who have no claims [against a dissolving corporation] pending at the time of dissolution." *Esquire Products, supra* at 113 (interpreting § 842, the predecessor of § 842a). A claim against the dissolved corporation, whether existing or contingent, is barred if not timely filed. Sections 841a and 842a; *Esquire Products, supra* at 113. The "Legislature has created a process whereby a dissolved corporation can bar future claims, thus cutting off the possibility that the corporation's potential liability could never be completely resolved." *Freeman, supra* at 96.

We also reject the reasoning that § 842a is not intended to bar latent claims or claims that could not reasonably be brought within one year of notice of corporate dissolution. The unambiguous language of the statute rebuts such an interpretation. Subsection 842a(3)(c) plainly bars claims that are "contingent or based on an event occurring after the effective date of dissolution." Moreover, the intent of the Legislature to bar claims that are both unknown and that arise after the dissolution of the corporation is shown by subsection 842a(3)(a), which bars a claim by a "claimant who did not receive written notice under section 841a."[5]

Furthermore, the argument that it is patently or inherently unfair to bar plaintiffs' claims must be rejected in light of the plain words of the statute. Neither this Court nor the circuit courts may interpret or apply § 842a using a personal view of the fairness or wisdom of the Legislature's policy decision. Courts must enforce the statute as written. *Smith, supra* at 430; *Muskegon Area Rental Ass'n v Muskegon,* 465 Mich 456, 467; 636 NW2d 751 (2001) ("it is not for the courts to substitute their judgment for that of legislative bodies on such questions of economic and social policy"). Accordingly, we hold that the plain language of § 842a, as applied to the undisputed facts of these

---

[5] Section 841a bars existing claims against a dissolving corporation upon written notice and failure to commence a proceeding to enforce the claim within ninety days. An "existing claim" is defined as "any claim or right against the corporation, liquidated or unliquidated," but does not include "a contingent liability or a claim based on an event occurring after the effective date of dissolution." MCL 450.1841a(4). Although not necessary to decide these cases, we reject Hi-Temp's argument that the "good cause" exception in subsection 851(2) is limited to creditors existing at the time of corporate dissolution.

consolidated appeals, bars plaintiffs' claims unless an exception is found elsewhere in the BCA.

We also hold that § 855a does not preclude Hi-Temp from asserting the bar of § 842a. Section 855a of the BCA provides that before distributing its assets to shareholders, a dissolving corporation shall "make provision for its debts, obligations, and liabilities." MCL 450.1855a. Moreover, a dissolving corporation must make a "reasonable estimate" and provide for "those debts, obligations, and liabilities anticipated to arise after the effective date of dissolution." *Id.* Although the failure to comply with § 855a may give rise to liability, *Travelers Ins Co v Jacob C Mol, Inc,* 898 F Supp 528, 531 (WD Mich, 1995), the statute also specifically provides that a dissolving corporation need not provide "for any debt, obligation, or liability that is or is reasonably anticipated to be barred under section 841a or 842a." MCL 450.1855a. Again, applying the plain language of § 855a, Hi-Temp is not estopped from asserting the bar of § 842a.

Plaintiffs, in essence, concede that but for § 851, § 842a would time-bar their claims. Plaintiffs argue that Hi-Temp's products-liability insurance policy is an undistributed asset, and that they have good cause for not timely filing their claims because asbestos-related diseases had not become manifest before the time provided in § 842a expired. Even if we assume that plaintiffs have "good cause" for not filing their claims earlier, we disagree that Hi-Temp's liability insurance policy is an undistributed asset within the meaning of § 851.

MCL 450.1851(2) provides:

> *For good cause shown, and so long as a corporation has not made complete distribution of its assets,* the court may

permit a creditor who has not delivered his or her claim or commenced a proceeding to enforce his or her claim within the time limits provided in sections 841a and 842a to file the claim or to commence a proceeding within the time as the court directs. [Emphasis supplied.]

To invoke the discretion of the court under subsection 851(2) three criteria must be fulfilled: (1) the period to submit claims pursuant to §§ 841a and 842a must have expired; (2) the claimant must have had good cause for not timely asserting the claim; and (3) the corporation must have not completely wound up its affairs by completely distributing its assets. Here, criterion one applies because no one disputes, so we assume, that plaintiffs had "good cause" for not timely asserting their claims because no claim accrued until asbestos-related disease manifested itself. But subsection 851(2) cannot apply unless a liability insurance policy Hi-Temp held during its corporate lifetime is an asset the corporation failed to distribute in winding up its affairs after dissolution.

Under the BCA, subsection 851(2) applies only where the dissolved corporation "has not made complete distribution of its assets . . . ." Because the BCA does not define "asset" to either include or exclude third-party liability insurance, we find that an ambiguity exists permitting judicial construction of the statute. "Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). Further, when interpreting a statute, a court must consider both the plain meaning of the critical word or phrase and also " 'its placement and purpose in the statutory scheme.' " *Id.* at 237, quoting *Bailey v*

*United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995). Here, subsection 851(2) must be read together with §§ 833, 834, 841a, 842a, and subsection 851(1) of the BCA, which provide for the orderly winding up of corporate affairs, including the liquidation and distribution of assets.

MCL 450.1106(4) defines "distribution" for purposes of the BCA as follows:

> "Distribution" means a *direct or indirect transfer of money or other property*, except the corporation's shares, or the incurrence of indebtedness by the corporation to or for the benefit of its shareholders in respect to the corporation's shares. A distribution may be in the form of a dividend, a purchase, redemption or other acquisition of shares, an issuance of indebtedness, or any other declaration or payment to or for the benefit of the shareholders. [Emphasis supplied.]

We recognize that case law exists that suggests an indemnity insurance policy is an asset of a viable corporation. But that is not the case before us. We cannot locate any authority for the proposition that an *expired*[6] third-party liability policy is property that Hi-Temp could transfer in the process of liquidating its assets. Nor is there any support for the contention that an insurance policy remained an asset of the corporation after existing claims were satisfied during liquidation and the deadline for filing future claims had expired.

---

[6] The liability policies were issued annually, so even though they were occurrence policies, each would have had coverage dates for purposes of identification, billing, and so forth. Our use of the term "expired" is thus used in this context to reflect coverage dates set forth on the declaration sheet of each year's policy.

Indeed, the contracts of insurance existed to provide indemnification to Hi-Temp in the event it was found liable for a tort claim. See *Samuels v Acme Market*, 845 F Supp 292, 294 (ED Pa, 1994). That is, their *only* value is the protection they provided from tort liability judgments. We cannot accept plaintiffs' contention that an asset is simply something that the corporation owns or has. In fact, the definition of the word "asset" is "[a] useful or valuable quality or thing." *The American Heritage Dictionary of the English Language* (1981). If there have been no tort claims triggering claims for defense or indemnification by Hi-Temp, or the deadline for the filing of any claims covered by the policies has expired, the policies are of no value. They cannot be "distributed." They are no longer assets of the corporation. Accordingly, we conclude that an expired third-party liability insurance policy is not an asset that would permit the conclusion that a dissolved corporation "has not made complete distribution of its assets" within the meaning of subsection 851(2).

The cases on which plaintiffs rely to reach the opposite conclusion are inapposite because they do not interpret Michigan's BCA. Plaintiffs rely heavily on *Williams v Grossman, supra*, to argue that subsection 851(2) applies. The *Williams* decision has surface appeal when coupled with the analogy that a dissolved corporation is "dead," and because the plaintiff in *Williams* was permitted to reopen the closed estate of the decedent to pursue tort recovery against the decedent's automobile liability policy. But on closer examination, the analogy fails because the estate in *Williams* was not reopened on the basis that

an insurance policy was deemed an undistributed asset of the estate.

In *Williams*, the plaintiff was a passenger in the decedent's vehicle but failed to file a negligence action against the decedent's personal representative before an estate had been opened and then closed. *Williams, supra* at 76, 81. All assets of the estate had been distributed. *Id.* at 79. The plaintiff nevertheless filed an action against the decedent's personal representative, which the trial court dismissed because, under *In re Curzenski Estate*, 384 Mich 334; 183 NW2d 220 (1971), an action could not be maintained "directly against the personal representative of an estate after it has been closed." *Williams, supra* at 77. Our Supreme Court in *Williams* overruled *Curzenski, supra,* and held that the estate could be reopened on the basis that the administration of the estate was incomplete, not because the decedent's liability insurance was an undistributed asset. Our Supreme Court concluded that the plaintiff was not required to file her negligence claim in the probate court, so the plaintiff's claim was not thereby barred. *Williams, supra* at 77-78. Because the plaintiff failed to file a claim in the probate court, however, she could not recover from distributed estate assets. The plaintiff was limited to recovering any damages awarded from other sources that might be available to the personal representative, including any liability insurance the decedent may have had, or from the Motor Vehicle Accident Claims Fund (MVACF) if the decedent was uninsured. The Court opined:

> Although the probate of an estate has been completed and the estate closed, where a person has *an action which by statute may be commenced directly against the per-*

sonal representative of the decedent without first filing a
claim against his probate estate, the administration of the
estate is "incomplete" within the meaning of the statute
and upon petition the estate may be reopened to provide a
suable person so that the action can be commenced.
Because the person having the right of action has not filed
a claim in the probate proceeding (or, before it was closed,
notice of suit pending), recovery of money damages *is lim-
ited to sources other than assets of the probate estate there-
tofore distributed, e.g., to sources such as the estate's right
of indemnification from an insurer or the obligation of
the Motor Vehicle Accident Claims Fund to compensate
victims of uninsured drivers.* [*Id.* at 77-78 (emphasis
supplied).]

To be sure, the *Williams* Court opined that "a dece-
dent's right to be indemnified under a policy of insur-
ance may be deemed an asset" for the purpose of hav-
ing an asset with some value to probate. *Williams,
supra* at 85. And the Court wrote, "It does not appear
that there is any legislative purpose to relieve fortui-
tously a decedent's insurer of its contractual obliga-
tions or the MVACF of its statutory obligations." *Id.* at
87. But the Court's holding hinges on the fact that the
plaintiff's claim was not barred by the probate court's
claims procedure or the applicable statute of limita-
tions. The Court noted that the applicable part of the
Probate Code, MCL 704.56, "permits reopening an
estate for the purpose of administering 'after discov-
ered assets *or* to complete the administration of the
same in case said estate was closed without being
fully administered . . . .' " *Williams, supra* at 81
(emphasis in the original). And the Court framed the
issue presented as follows: "The question before us
does not concern the time or procedure for filing
claims against the probate estate but, rather, the
means of providing a suable defendant for an action

which the statute authorizes to be commenced directly against the decedent's personal representative." *Id.* at 84. In that regard, the *Williams* Court concluded, "the administration of a decedent's estate is 'incomplete,' within the meaning of the statute, to the extent a person may yet commence an action against the decedent's personal representative under the statute." *Id.* at 88. Hence, the *Williams* Court's decision has nothing to do with whether the decedent was insured.

In contrast to *Williams*, the plain language of § 842a specifically bars plaintiffs' claims. Moreover, barring plaintiffs' claims furthers the Legislature's purpose, as indicated by the statutory language, of putting to rest all late-arising claims against a dissolved corporation and bringing finality to corporate dissolution. The Legislature "has created a process whereby a dissolved corporation can bar future claims, thus cutting off the possibility that the corporation's potential liability could never be completely resolved." *Freeman, supra* at 96. In sum, *Williams* differs from the present cases because it: (1) did not interpret the BCA, (2) did not find liability insurance to be a distributable asset, and (3) did not address a statutory prohibition to the plaintiff's claim. For the same reasons, plaintiffs' reliance on cases from other jurisdictions[7] is misplaced because those cases address tort claims against decedents' estates.

Plaintiffs' reliance on *Nat'l Union, supra,* to conclude that Hi-Temp's insurance policy was an "undistributed asset" for purposes of subsection 851(2) is

---

[7] *Moultis v Degen,* 279 SC 1; 301 SE2d 554 (1983), *In re Miles Estate,* 262 NC 647; 138 SE2d 487 (1964), and *Belancsik v Overlake Mem Hosp,* 80 Wash 2d 111; 492 P2d 219 (1971).

also misplaced. Clearly, the first-party claim of the Resolution Trust Corporation (RTC) for $152 million in losses attributable to fraudulent conduct of bank employees was an asset of the insolvent bank the RTC was administering. So, *Nat'l Union* is distinguished from the cases at bar because it (1) interpreted federal law, (2) concerned claims and counterclaims of the insured through its successor, the RTC, during the period of winding up the affairs of the insolvent bank, (3) addressed a first-party claim of the insured through its successor, the RTC, for acts and occurrences occurring before insolvency, and (4) represented a substantial value to the insolvent bank (and its creditors). It must be assumed that because the RTC's claims under the insurance policies in *Nat'l Union* had a potential value of $152 million that the claims could have been sold or transferred. In contrast, no legal authority or factual support has been brought to this Court's attention that Hi-Temp could have sold or transferred for consideration its expired third-party liability insurance policies during its liquidation.

For much the same reasons, *Samuels, supra,* is distinguishable. *Samuels* also addressed federal court jurisdiction of a third-party tort claim asserted against an insolvent financial institution when the Resolution Trust Corporation was appointed the receiver.

Further, plaintiffs' reliance on cases interpreting business corporation laws of other states is also unavailing. Plaintiffs rely on *Penasquitos, Inc v Superior Court of San Diego Co,* 53 Cal 3d 1180; 283 Cal Rptr 135; 812 P2d 154 (1991), *Hood Bros Partners, LP v USCO Distribution Services, Inc,* 140 F3d 1386 (CA 11, 1998), and *Gossman v Greatland Directional*

*Drilling, Inc*, 973 P2d 93 (Alas, 1999). But *Penasquitos, Hood Bros*, and *Gossman* each interprets a statutory scheme different from that adopted by Michigan. Unlike Michigan, California, New Jersey, and Alaska have not followed the Model Business Corporation Act (1984) by establishing time limits for claims against a dissolved corporation. Section 14.06 of the 1984 MBCA, like § 841a of Michigan's BCA, provides, upon proper notice, a time-bar for known or existing claims of a dissolving corporation. Section 14.07 of the 1984 MBCA, like § 842a of Michigan's BCA, provides, upon proper notice, a time-bar for future or contingent claims. The California Supreme Court noted that, unlike the MBCA, "our statutes permit the corporate existence to continue indefinitely for the purpose of [postdissolution] actions." *Penasquitos, supra*, 53 Cal 3d 1190. Moreover, the *Penasquitos* court discussed liability insurance as a source of recovery by postdissolution claimants separate from undistributed assets or later-discovered assets of a dissolved corporation. *Id.* at 1191-1192. Similarly, the Eleventh Circuit Court of Appeals applied New Jersey law that did not time-bar postdissolution claims. *Hood Brothers, supra*, 140 F3d 1390-1391. Likewise, Alaska specifically repealed its two-year time-bar for claims after corporate dissolution and replaced it with a statutory scheme identical to that of California. *Gossman, supra*, 973 P2d 95, 97. The court noted that Alaska had chosen not to adopt § 14.06 or § 14.07 of the MBCA (1984). *Gossman, supra* at 98-99. Thus, the *Gossman* court concluded the "Alaska Legislature intended to allow suits against dissolved corporations for an indefinite time." *Id.* at 99.

In contrast, although of limited help in interpreting Michigan law, appellate decisions in other jurisdictions interpreting statutes similar to Michigan's BCA have analyzed the issue similarly to this Court. In *Blankenship, supra,* the plaintiff filed a strict-liability tort action after injuring her hand in a machine manufactured by Demmler Manufacturing. Demmler moved to dismiss because the suit had not been brought within two years of its corporate dissolution as required by Illinois law. *Id.* at 570, 573. The *Blankenship* court agreed, finding that the Illinois legislature intended to "to establish a definite point in time when a corporation ceases to exist." *Id.* at 574. The court also rejected the plaintiff's argument that an insurance policy might be an undistributed asset, concluding that because no cause of action could be brought more than two years after dissolution of the corporation, the existence of an insurance policy was irrelevant. *Id.* See also *Podvin v Jamar Co,* 655 NW2d 645 (Minn App, 2003), holding that under Minnesota law the plaintiff's asbestos claim that was not filed against the dissolved corporate defendants within the period prescribed by statute was barred, *Durham Clinic, PA v Barrett,* 107 SW3d 761 (Tex App, 2003), holding under Texas law that a malpractice suit filed more than three years after dissolution of a professional association was barred, and *Lovold Co v Galyan's Brownsburg, Inc,* 764 NE2d 281, 285 (Ind App, 2002), applying Indiana's "survival statute," which showed "a legislative policy to place a definite termination upon corporate existence with respect to dissolution," to bar an untimely suit for environmental cleanup costs.

In addition plaintiffs cite inapposite cases[8] discussing when a successor to corporate assets may also succeed to the corporation's liabilities, a legal question not relevant to the question presented in these consolidated appeals.

Finally, plaintiffs' policy arguments[9] are also unpersuasive because they are not based on the plain language of the statute or a reasonable construction of the ambiguity alleged in the word "asset." It is the Legislature's prerogative to adopt policy, not this Court's. *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 501-502; 638 NW2d 396 (2002). The "judicial task is to give meaning to the intent of the Legislature, as expressed in the statutory text." *Id.* at 501 n 7.

### IV. CONCLUSION

The plain language of § 842a, as applied to the undisputed facts in these consolidated appeals, bars plaintiffs' claims against Hi-Temp. Because Hi-Temp properly published notice of its dissolution, plaintiffs were required by subsection 842a(3) to file their claims within one year of the publication of notice of dissolution. Although a liability insurance policy is an asset to a viable corporation and to a corporation in the process of winding up its affairs after dissolution, it is not an asset of a dissolved corporation that has distributed all assets capable of distribution where the period permitted for filing claims has expired.

---

[8] *City of Richmond v Madison Mgt Group, Inc*, 918 F2d 438 (CA 4, 1990), and *Simmers v American Cyanamid Corp*, 394 Pa Super 464; 576 A2d 376 (1990).

[9] Plaintiffs argue that this Court should interpret the statutes at issue to preclude collusion between corporations and their insurers and ensure that parties injured by defective products are compensated.

Accordingly, subsection 851(2) provides no relief from the bar of § 842a, even if plaintiffs had "good cause" for not timely filing their claims. Finally, Hi-Temp is not estopped to assert the bar of § 842a because § 855a plainly states that a dissolved corporation need not provide for future contingent claims that will reasonably be barred by either § 841a or § 842a. We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.