LAFAYETTE REALTY CORPORATION ET AL. *v.* MOLLER ET AL.

[No. 30,817. Filed April 26, 1966. Rehearing denied June 6, 1966.]

*Arch N. Bobbitt, Murray E. Dulberger* and *P. K. Ward* and *Dulberger, Heeter & Johnson* and *Ruckelshaus, Bobbitt & O'Connor,* of Counsel, of Indianapolis, for appellants.

*Charles L. Whistler, Barry Z. Wallack, David M. Lewis* and *John T. Rocap* and *Baker & Daniels, Lewis & Shortridge,* and *Rocap, Rocap, Reese & Robb,* of counsel, of Indianapolis, for appellees.

ARTERBURN, J.—The main action in this case was one for damages and for an accounting. An application was made for the appointment of a receiver pendente lite because of alleged mismanagement of the appellant corporation, Lafayette Realty Corporation. The trial court granted the petition for a receiver pendente lite after a hearing.

It is claimed on appeal that the trial court abused its discretion in appointing a receiver, first because no emergency is shown for the appointment pendente lite; secondly, there were adequate remedies by accounting, damages, or by restraining orders and injunction, and finally there was a lapse of time in which the appellees acquiesced in certain practices out of which the injuries complained of developed.

For more than six years prior to the bringing of the action, the Lafayette Realty Corporation had been engaged in the business of owning and operating a shopping center in the City of Indianapolis, with the appellants Voigt and Harbison holding a majority and controlling interest in the stock, while the appellees held a minority interest of approximately 20% of the capital stock. Appellant Voigt was president, Harbison was secretary, and for all practical purposes they ran and operated the corporation as such officers. There seems to have been no controversy nor any questioning of their actions or authority until shortly before the commencement of the main action about 1963. The evidence shows that during this period of time of which mismanagement is complained, the corporation prospered and the original investment of the stockholders increased from $1,000.00 to an

alleged net worth of approximately half a million. There were times, however, when there was not sufficient cash in the operating account to pay current bills. There was further testimony to the effect that the minority stockholders who brought this action were interested in a sale of all the corporation's assets, but the majority interests were to the contrary.

The petition for a receivership alleges as grounds therefor that the majority stockholders misappropriated and diverted funds of the Lafayette Realty Corporation by entering into a management contract with General Asbestos and Supply Company, owned by the majority shareholders, under which contract 6% of the gross receipts were to be paid for such management services of the shopping center.

It was further claimed:

That the Lafayette Realty Corporation borrowed $45,-000.00 from one Rita Feesor with interest at 10%. This money was used to repay stockholders who had advanced money to the corporation;

That the Lafayette Realty Corporation entered into a contract with General Asbestos and Supply Company to operate a cafeteria and billiard room in certain rooms in the shopping center, to the advantage of the latter corporation. The evidence shows that these rooms had been vacant for a long period of time, and it is argued that it was helpful to have the rooms filled in the shopping center;

Further complaint was made that the appellant corporation entered into a contract with the General Asbestos and Supply Company for the maintenance of the parking lot, and in answer thereto it is argued that the contractual arrangement was for a substantially less amount than had been paid under a prior contract;

An additional contention is made that dividends in the aggregate of $40,000.00 were paid to all the shareholders and that the capital was thereby impaired. The appellants point out that all the shareholders participated in this dividend, including the appellees, and received the benefits of such distribution and made no complaint;

As to the loan from Rita Feesor, it is contended that it was one which no bank would make, and the evidence seems to be undisputed on that issue. A banker so testified.

Considerable argument is presented upon the point that because of the interlocking directorate that existed between the Lafayette Realty Corporation and the General Asbestos and Supply Company, the majority shareholders Voigt and Harbison were fraudulently "milking" the Lafayette Realty Corporation. On the other hand, it is pointed out that the evidence is undisputed that all the shareholders knew that the president and secretary of the corporation had assumed full authority in operating the corporation and its shopping center and had so managed the shopping center from the beginning; that they were paid no personal salary; that there was no separate office or management personnel or administrative officers for managing the project, obtaining the leases, collecting the rents, and maintaining the repairs and other day to day operating chores. We find, therefore, that these complaining shareholders and directors knew or should have known that some one had to exercise authority in looking after the corporation's business, in overseeing the shopping center and caring for it. This would require personnel in leasing, collecting rents, looking after repairs, etc., with offices and expenses in connection therewith. It does not seem that the mere fact that a management contract was made can now justly be complained of in this case. It is only because this contract was made with a company in which the majority stockholders had a controlling interest and which management contract appears to have been exorbitant from some of the evidence, that such contract might have any relationship to this case.

We are confronted with the proposition of whether or not a corporation may be forced into receivership where its president and secretary have, for a number of years, exercised almost absolute authority in the management of the corporation's business, with no objections from minority stockholders until fairly recently, and where the evidence shows there may have been some overreaching and diversion of its funds

to another corporation in which the majority interest made a profit.

For a majority interest in the corporation to take advantage of their position and make contracts with another corporation or themselves from which they profited, can only be condemned. Before the court will ignore such type of contracts, it at least must be shown that they are equitable and fair in their operation. One will not be permitted to profit from his trust, to the injury of innocent parties.

However, such a statement does not in itself answer the legal question involved here as to whether or not a receivership is proper. It is not every controversy connected with mismanagement in a corporation that will be grounds for a receivership. Courts generally frown upon such a radical remedy. A receivership as a rule results in a disruption of the business, if not a termination of the same. If it does not result in a liquidation or sale of the business, to the injury of all parties, then it must eventually be turned back to the shareholders, with the result again that the same majority shareholders would have control of the corporation. The law recognizes that the majority shareholders normally have a right to manage, operate and control the corporation. 6 I. L. E., Corporations, § 122, p. 513.

The main action here was one for an accounting and damages. If the appellees-plaintiffs are successful in the main action, a judgment should compensate them, and they would be reimbursed for any losses which they claim they sustained. There is no showing that the defendants below were insolvent and that a judgment would be unsatisfied. The fact is, the evidence shows that it is a growing, profitable concern in spite of the alleged mismanaging and overreaching by the majority interests. A restraining order and an injunction could have promptly stopped the practices complained of in this case. We do not believe that this warrants the radical remedy of receivership, which

would be practically fatal to the corporate existence. Such an operation is generally so severe that it is fatal to the patient. As long as there is any other adequate remedy available, a receivership is not in order.

In *Fagan, etc. et al.* v. *Clark, et al.* (1958), 238 Ind. 22, 27, 148 N. E. 2d 407, 409, we said:

"Relief by receivership is an extraordinary remedy and is never exercised if there is an adequate remedy at law or the harm can be prevented by injunction or restraining order. In the latter instance a bond affords some protection against an improvident order made for such equitable relief. However, in the case of a receivership, the statute does not provide for any bond indemnifying the injured party in case of an erroneous appointment of a receiver."

In *Indianapolis Dairymen's Co-op.* v. *Bottema* (1948), 226 Ind. 237, 245, 79 N. E. 2d 399, 404, we said with reference to a receivership:

" 'The power of appointment is a delicate one, and to be exercised with great circumspection.' "

To sum up, before a receiver may be appointed:

(1) An emergency must be shown to exist such that the management and operation of a corporation must be taken over at once from those in control.

(2) Irreparable damage and injury must result unless a receiver is appointed, and

(3) There must be no adequate remedy otherwise available.

Applying the test here, we fail to find any facts showing an emergency exists for the appointment of a receiver. The alleged acts of overreaching and alleged acts of fraud alone are not sufficient grounds for a receiver in every case, but they must be of such magnitude and of such character that the survival of the corporation and its operations is immediately imperiled. There is a failure here to show that any irreparable damage will occur to the appellees and plaintiffs below, minority stockholders. The main action here is for an accounting and a judgment for any damages

shown. The evidence does not show that the defendants in the main action are insolvent and that any judgment rendered would be unsatisfied. If we consider with that point the question of adequacy of other remedies, it occurs to us that restraining orders or injunctions would grant the appellees protection pending the outcome of the main action. The evidence shows that the individual appellants stated in court that they would abide by any restraining order issued by the court relative to this case. We therefore fail to find that the essential elements exist here upon which a court may, in its discretion, place a corporation into receivership.

What we have said here with reference to the alleged acts of misconduct on the part of any of the parties is not a finding or adjudication in respect to such acts, but the merits of the issues of the main action remain to be determined without prejudice to the parties as a result of any review of the facts made in this opinion.

The interlocutory order granting a receiver herein is reversed, with directions that said order appointing a receiver be vacated.

Myers, C. J. and Rakestraw, J., concur. Jackson, J., concurs in result. Achor, J., not participating.

NOTE.—Reported in 215 N. E. 2d 859.