The CITY OF SOUTH BEND, Indiana, et al., Appellants–Plaintiffs,

v.

CENTURY INDEMNITY COMPANY, et al., Appellees–Defendants.

No. 49A02–0403–CV–201.

Court of Appeals of Indiana.

Jan. 18, 2005.

**6**

---

George M. Plews, Jeffrey D. Featherstun, Donald P. Bogard, Plews, Shadley, Racher & Braun, Indianapolis, IN, Cheryl A. Greene, Assistant City Attorney, South Bend, IN, Attorneys for Appellant.

Anthony W. Overholt, Office of Corporation Counsel, Indianapolis, IN, Timothy A.

Manges, Fort Wayne, IN, James B. Meyer, Meyer & Wyatt, P.C., Gary, IN, John P. Gourley, Corporation Counsel, Mishawaka, IN, Matthew W. Cockrell, Matthew W. Cockrell & Associates Kenilworth, IL, Attorneys for Amici Curiae the Cities of Indianapolis, Fort Wayne, Gary, Mishawaka, and Jeffersonville, Indiana.

Mark E. Shere, Indianapolis, IN, Dale E. Stephenson, Allen A. Kacenjar, Squire, Sanders & Dempsey, L.L.P. Cleveland, OH, Attorneys for Appellees McGraw–Edison Company.

Bruce L. Kamplain, Norris, Choplin & Schroder. L.L.P., Indianapolis, IN, Terry M. Cosgrove, Arthur J. McColgan, Lord, Bissell & Brook, L.L.P., Steven D. Pearson, Brent J. Graber, Meckler, Bulger & Tilson, L.L.P., Chicago, IL, Brian C. Coffey, Cohn, Baughman & Martin, Chicago, IL, Martha S. Hollingsworth, Bingham McHale, L.L.P., Indianapolis, IN, Stephen J. Peters, Stewart & Irwin, P.C., Indianapolis, IN, Attorneys for Appellees Century Indemnity Company Zurich American Insurance and Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies.

Steven M. Badger, Michael R. Limrick, McTurnan & Turner, Indianapolis, IN, Laura A. Foggan, John C. Yang, Paul J. Haase, Wiley, Rein & Fielding, L.L.P, Washington, D.C., Attorneys for Amici Curiae Complex Insurance Claims Litigation Association.

Laura S. Reed, Riley, Bennett & Egloff, L.L.P., Indianapolis, IN, Attorney for Amici Curiae the Insurance Institute of Indiana and Property Casualty Insurers Association of America.

## OPINION

ROBB, Judge.

The City of South Bend, Indiana and the South Bend Redevelopment Commission (collectively, the "City") appeal from the trial court's orders granting motions by Certain Underwriters at Lloyd's, London, and Certain London Market Insurance Companies ("London"), Century Indemnity Company, and Zurich American Insurance Company (collectively, the "Insurers") to dismiss the City's amended complaint and denying the City's motion for appointment of receiver. We affirm in part and reverse and remand in part.

### Issues

The City raises two issues for our review, which we restate as follows:

1. Whether the trial court properly dismissed its complaint against the Insurers upon finding that the suit was barred by the "direct action" rule; and

2. Whether the trial court properly denied its request for appointment of a receiver to act on behalf of a dissolved company.

### Facts and Procedural History

Beginning in the 1850s, Studebaker Corporation, a Michigan corporation, manufactured first wagons and then automobiles in the City. Studebaker's facilities in the City ultimately covered 104 acres and approximately 3.65 million square feet under roof. Studebaker discontinued manufacturing automobiles in December 1963, and over the next year, divested its automotive operations in the City. In October 1967, Studebaker combined with Worthington Corporation to form a new company, Studebaker–Worthington Inc. As part of that transaction, Studebaker was reincorporated as Hallpark Enterprises, Inc. and transferred its assets and business to Saraband Properties, Inc., a wholly-owned subsidiary of Studebaker–Worthington Inc. Also as part of the transaction, Saraband assumed "all of the liabilities and

obligations of [Studebaker] existing on [November 22, 1967]." Appellants' Appendix at 900. On January 9, 1968, Hallpark Enterprises, Inc. sent a notice to creditors pursuant to Michigan statute advising that

> the corporate existence of Hallpark Enterprises, Inc., a Michigan corporation, formerly known as Studebaker Corporation (the "Corporation"), terminated on November 30, 1967. On November 22, 1967 substantially all of the assets of the Corporation were transferred to a wholly-owned subsidiary of Studebaker–Worthington, Inc., a Delaware corporation, in a tax-free reorganization pursuant to an Agreement and Plan of Reorganization made as of October 4, 1967 under which substantially all of the liabilities of the Corporation were assumed by said wholly-owned subsidiary.

Appellants' Appendix at 956. A similar notice was published once each week for three weeks in the Detroit Legal News. *Id.* at 960, 963. On January 26, 1968, a Certificate of Termination was filed with the Michigan Department of Treasury pursuant to which a majority of the remaining members of the last board of directors of Hallpark Enterprises certified that the corporation had been terminated by expiration of term on November 30, 1967. *Id.* at 961–62.

Following Studebaker's divestiture of its automotive facilities in the City, the facilities were used for a variety of other operations. In the early 1990s, the City conducted an environmental evaluation of the former Studebaker facilities and determined that there were significant environmental releases impacting the soil and groundwater at those facilities and surrounding areas. The City is now the owner of significant portions of the former Studebaker facilities.

In March of 2003, the City filed a complaint for damages and declaratory relief[1] against the Insurers and McGraw–Edison, the company alleged to be the successor to Studebaker.[2] With respect to the insurers, the City sought a declaration that the Insurers "are obligated to provide insurance coverage, subject to their respective policy limits, for the environmental liabilities [the City] asserts against Studebaker." Appellants' Appendix at 830. Thereafter, the Insurers filed motions to dismiss the complaint for failure to state a claim upon which relief may be granted. The City filed a motion for appointment of receiver to "represent Studebaker's interests, particularly with respect to the pursuit of coverage under the company's insurance policies for the claims at issue in this matter." Appellants' Appendix at 903. The Insurers' motions to dismiss were granted, with prejudice, and the City's motion for appointment of a receiver was denied. This appeal ensued.[3]

---

1. The complaint was amended in September 2003 to correct and/or add party defendants.

2. Also included as a defendant in the complaint is Hartford Accident and Indemnity Company, as insurer of White Motor Company, successor to Oliver Plow Works. Oliver Plow Works occupied facilities across the street from the former Studebaker facilities. The soil and groundwater at these facilities are also impacted by significant environmental releases. The City and Hartford stipulated to a stay with respect to Hartford only pending resolution of this appeal.

3. The Cities of Indianapolis, Fort Wayne, Gary, Mishawaka, and Jeffersonville, Indiana have filed a motion to appear as amici curiae substantively aligned with the City. Complex Insurance Claims Litigation Association and the Insurance Institute of Indiana and Property Casualty Insurers Association of America have filed motions to appear as amici curiae substantively aligned with the Insurers. The motions are hereby granted, and we have considered the amici briefs in deciding this case.

*Discussion and Decision*

### I.   Motion to Dismiss

#### A.   Standard of Review

■ This case is before us on appeal from the trial court's dismissal of the City's complaint against the Insurers pursuant to Indiana Trial Rule 12(B)(6). A 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Lawson v. First Union Mortgage Co.*, 786 N.E.2d 279, 281 (Ind.Ct.App.2003). On review, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Id.* We stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* We may sustain the trial court's ruling if we can affirm on any basis found in the record. *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind.Ct.App. 2004), *trans. denied.* In making this determination, we look only to the complaint and may not resort to any other evidence in the record. *Id.*

#### B.   Dismissal of Action Against Insurers

The City sought a declaratory judgment that the Insurers, "subject to their respective policy limits, . . . are obligated to provide insurance coverage for Studebaker's environmental liabilities. . . ." Appellants' Appendix at 831. The Insurers filed motions to dismiss, which the trial court granted upon finding that the City's declaratory judgment action against the Insurers "is barred by the direct action rule. and falls outside the limited exception [to that rule] created by the courts in *Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co.*, 708 N.E.2d 882 (Ind.Ct.App.1999) and *Wilson [v. Continental Cas. Co.]*, 778 N.E.2d 849 (Ind.Ct.App.2002). Without any dispute between the parties to the insurance contract as to the rights and obligations deriving thereunder, the exception to the direct action rule does not apply." Appellants' Appendix at 35. *See also id.* at 44 and 50.

■ The "direct action rule" bars a party from pursuing a claim based on the actions of an insured directly against the insurer. *See Menefee v. Schurr,* 751 N.E.2d 757, 761 (Ind.Ct.App.2001), *trans. denied.* The direct action rule in Indiana originated in *Bennett v. Slater,* 154 Ind. App. 67, 289 N.E.2d 144 (1972). In *Bennett,* the plaintiff received a $20,000.00 judgment for injuries received in an automobile accident involving the defendant-insured. The insurer previously had offered the plaintiff $1,500.00 in settlement of her claim, but the plaintiff refused the offer. Instead, she offered to settle for $10,000.00, the limit of liability under the defendant's policy with the insurer. The insurer refused. After obtaining the judgment against the defendant, the plaintiff sued the insurer for its alleged failure to reasonably attempt to settle her claim against the defendant and for its failure to consider the interest of the defendant in light of the risk of recovery beyond the policy limits. The defendant refused to join as a party plaintiff. The insurer's motion to dismiss for failure of the plaintiff to state a claim in her complaint was granted by the trial court. On appeal, we held that an injured party has no standing to directly sue the insurer for its negligence where the insured refuses himself to sue. *Id.* at 149. We noted that the insurer owed no duty to the plaintiff, that she was not a third party beneficiary of the

duty owed by the insurer to the insured, and that subrogation did not apply in such a case. *Id.* at 148. Similar cases have followed this direct action rule. *See Winchell v. Aetna Life & Cas. Ins. Co.,* 182 Ind.App. 261, 394 N.E.2d 1114, 1117–18 (1979) (holding that plaintiff's complaint against defendant's insurer, which also happened to be her insurer, for failing and refusing to settle in good faith failed to state a claim upon which relief could be granted because it was an even less compelling case than *Bennett* in that the insured had not indicated it would not sue its own insurer and the litigation against the insured was not yet concluded and because, although the insurer owed a duty to the plaintiff for claims made under her own policy, she was alleging a breach of duty under the insured's policy); *Wallace v. Doan,* 155 Ind.App. 316, 292 N.E.2d 820, 826 (1973) (holding that the parties in a personal injury action were bound by an order of the probate court limiting the amount of recovery to the $10,000 policy limits of the decedent defendant's insurance policy and the $58,000 jury verdict was therefore subject to remittitur; and holding further that the plaintiff's argument that she would have accepted $9,000 in settlement but was only offered $3,500 and therefore the decedent's insurer was guilty of negligence in not settling the claim and was thereby responsible to the plaintiff for the amount of the recovery awarded by the jury above the policy limit is untenable based upon *Bennett*). Most recently, in *Menefee,* 751 N.E.2d at 761, we declined the appellants' invitation to abandon the direct action rule. In that consolidated case, several plaintiffs filed lawsuits against both the parties directly involved in personal injury incidents and against those parties' insurers, alleging bad faith on the part of the insurers in handling the claims. Each claim against an insurer was dismissed, and we affirmed,

citing *Bennett* and succeeding cases. *Id.* at 760–61.

As this progression of cases demonstrates, the general prohibition on direct action lawsuits is well-settled in Indiana, but as the trial court stated in its order granting the Insurers' motions to dismiss, our courts have also announced a limited exception. In *Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co.,* 708 N.E.2d 882 (Ind.Ct.App.1999), *trans. denied,* the plaintiff contracted for the installation of a new roof on its office building. The defendant roofer attempted to secure the building after only partially finishing the roof work, but the building was flooded by rain, causing approximately $170,000 in property damage. The defendant roofer's insurance carrier refused to indemnify him for the damage. The plaintiff filed a complaint against both the roofer and his insurance carrier, seeking a declaratory judgment that the roofer was entitled to indemnity from his carrier. The insurance carrier's motion to dismiss for failure to state a claim was granted by the trial court, and this court reversed, holding that "[w]here the plaintiff is not suing the insurance company to establish that its insured committed a tort against the plaintiff, but rather is suing to establish whether the insurer can deny coverage or whether the insurance policy remained in effect, such suit is not a direct action against an insurer." *Id.* at 886.

Subsequently, in *Wilson v. Continental Cas. Co.,* 778 N.E.2d 849 (Ind.Ct.App. 2002), *trans. dismissed,* the plaintiff sued her former attorney for malpractice. The attorney's legal malpractice insurance carrier represented the attorney in the lawsuit under a reservation of rights. While the legal malpractice case was proceeding, the plaintiff filed a declaratory judgment action against the insurer for the purpose

of obtaining a declaration that the insurer was obligated to represent the attorney without a reservation of rights and pay any settlement or judgment she obtained. The insurer filed a motion to dismiss for failure to state a claim and the trial court granted the motion. On appeal, this court held that "whether an alleged tortfeasor's insurance carrier has denied coverage or is defending under a reservation of rights is a distinction without a difference." *Id.* at 852. Therefore, the exception announced in *Community Action* applied equally in either circumstance, and the plaintiff's declaratory judgment action was allowed to proceed. *Id.*

■ The trial court found that this case did not fall within the narrow exception to the direct action rule announced in *Community Action* and dismissed the City's complaint against the Insurers as an impermissible direct action. The City contends that its claim is not a direct action and that the trial court erred in dismissing it. We agree.

The kinds of actions which have been barred by the direct action rule are actions against the insurer for the insurer's own negligence or bad faith in handling claims. The kinds of actions which have been allowed by the exception are actions seeking only a declaration of the insurer's responsibilities should the allegations regarding the insured's conduct be proven. The City's claim against the Insurers falls in the latter category. The City is not seeking any direct recompense from the Insurers; it is only seeking a declaration that, if it were to prove its underlying case, the Insurers would be obligated to provide coverage under the previously-issued policies. Considering that the original insured, Studebaker, no longer exists, and its alleged successor, McGraw–Edison, has not pursued insurance coverage for this action, the City's declaratory judgment action may be the only means by which a determination of insurance coverage can be made.

■ The Insurers and McGraw–Edison allege, however, that there is no environmental liability to be covered by insurance because, by statute, claims against Studebaker were barred as of approximately 1971. At the time Studebaker was dissolved in 1968, Michigan law[4] provided that within sixty days of a corporation being dissolved, the last board of directors must file a certificate with the Michigan corporation and securities commission to that effect signed by a majority of the remaining board members. Also within sixty days, the treasurer must notify in writing each of the corporation's known creditors of the dissolution, publish notice of the dissolution once each week for three successive weeks in a newspaper published in the city where the corporation had its registered office, and file an affidavit that the corporation has complied with these requirements. Mich. Comp. Laws § 450.74 (1953). In addition,

All corporations whose charters have expired by ... dissolution ... shall nev-

---

4. Indiana Code section 23–1–49–5(c) provides that Indiana's Business Corporation Law "does not authorize Indiana to regulate the organization or internal affairs of a foreign corporation authorized to transact business in Indiana." Accordingly, we have held that an Illinois corporation is governed by Illinois law granting a corporation only five years to wrap up its affairs, after which time it could neither sue nor be sued, rather than Indiana law granting an indefinite wrapping up period, even though the agreement under which the corporation sought to sue stated Indiana law would govern. *Interurban Indus., Inc. v. Twin States Publishing Co., Inc.,* 638 N.E.2d 882, 883–84 (Ind.Ct.App.1994), *trans. denied.* Because Studebaker was a Michigan corporation, Michigan law regarding corporations applies.

ertheless continue to be bodies corporate for the further term of 3 years from such ... dissolution ... for the purpose of prosecuting and defending suits for or against them ...: Provided, That with respect to any action, suit or proceeding begun or commenced by or against the corporation prior to such ... dissolution ... and with respect to any action, suit or proceedings begun or commenced by the corporation within 3 years after the date of such ... dissolution ..., such corporation shall only for the purpose of such actions, suits or proceedings so begun or commenced be continued a body corporate beyond said 3 year period and until any judgments, orders, or decrees therein shall be fully executed....

Mich. Comp. Laws § 450.75 (1953).

In a recent case, the Michigan Court of Appeals considered Michigan's current claims limit statute.[5] *Gilliam v. Hi–Temp Products, Inc.*, 260 Mich.App. 98, 677 N.W.2d 856 (2003). Hi–Temp has been sued frequently and continuously since the mid–1980s by people who allege that their exposure to Hi–Temp's asbestos products caused asbestos-related diseases. The limits of Hi–Temp's products liability insurance have not been exhausted. In 1992, Hi–Temp ceased active business operations and distributed its assets, and its dissolution was effective on October 25, 1993.

The plaintiffs' actions alleging personal injury or death from Hi–Temp's products were all filed after October 21, 1999. Hi–Temp moved for summary disposition in each of the numerous cases, asserting the statutory one-year claims limit. The plaintiffs alleged that they had shown good cause for not presenting their claims earlier and that Hi–Temp's insurance coverage was an undistributed asset.[6] Hi–Temp's motions for summary disposition were denied, and the cases were consolidated for appeal. The Michigan Court of Appeals held that the plaintiffs' actions were barred because they were filed beyond the one-year period allowed by statute for filing claims after the published notice of dissolution. *Id.* at 861. Because "[a]n insurance liability policy is not an asset that a corporation could distribute in the process of winding up its affairs after dissolution," the exception to the claims limit did not apply to save the plaintiffs' claims, even if they had shown good cause. *Id.* at 866. The court noted that at common law, "upon dissolution of a corporation, 'there is no one to serve, because, in law, a dissolved corporation is a dead person, so much so that, in the absence of statute and revival, even pending actions by or against it would abate.'" *Id.* at 867 (quoting *US Truck Co. v. Pennsylvania Sur. Corp.*, 259 Mich. 422, 426, 243 N.W. 311 (1932)). Thus, the legislature "'created a process whereby a dissolved corporation can bar future claims, thus cutting off the possibility that the corporation's potential liability could never be completely resolved.'" *Id.*

---

5. Michigan law now provides that the dissolved corporation may notify its known claimants in writing of the dissolution and fix a deadline not less than six months from the date of the notice by which time the dissolved corporation must receive the claim. After the deadline, claims are barred. Mich. Comp. Laws § 450.1841a. The dissolved corporation may also publish notice of the dissolution and state that a claim against the corporation will be barred unless a proceeding to enforce the claim is commenced within one year after publication. Mich. Comp. Laws § 450.1842a.

6. A Michigan statute provides that for good cause shown and as long as a corporation has not made complete distribution of its assets, the court may permit a creditor who presents his claim outside the time limits of sections 1841a and 1842a to file the claim or commence a proceeding. Mich. Comp. Laws § 450.1851.

at 868 (quoting *Freeman v. Hi-Temp Products, Inc.*, 229 Mich.App. 92, 580 N.W.2d 918 (1998), *appeal denied* ).

The court rejected the plaintiffs' contention that the claims limit statute is not intended to bar latent claims or claims that could not reasonably be brought within one year of notice of dissolution because the unambiguous language of the statute bars both claims that are "contingent or based on an event occurring after the effective date of dissolution," Mich. Comp. Law § 450.1842a(3)(c), and claims that are both unknown and arise after dissolution. Mich. Comp. Law § 450.1842a(3)(a). Thus, "[a] claim against the dissolved corporation, whether existing or contingent, is barred if not timely filed." 677 N.W.2d at 868.

The City sought a declaratory judgment that the Insurers are obligated to provide insurance coverage for Studebaker's environmental liabilities. The City alleged in its complaint that the Insurers provided insurance to Studebaker between 1949 and 1963.[7] The Insurers allege, based upon Michigan law as outlined above, that any claims against Studebaker for even a covered event during those years were barred as of 1971, and the trial court therefore properly dismissed the City's complaint against the Insurers for failure to state a claim upon which relief could be granted. Had the City named only Studebaker as a party to its substantive action for the costs of environmental clean-up, we would agree with the Insurers that there was no liabili-

ty for insurance to cover. However, the City sued McGraw–Edison, alleging that McGraw–Edison is the successor to Studebaker's assets, including the insurance policies with the Insurers, as well as all of Studebaker's liabilities existing as of the date of Studebaker's dissolution. If the City's allegations are proven, the effect of Studebaker's dissolution is moot, because although the company itself does not continue to exist, its assets and liabilities may. Therefore, Michigan's claims limit statute does not compel dismissal of the City's action against the Insurers.[8]

Accordingly, we hold that the trial court erred in dismissing the City's declaratory judgment action against the Insurers, as it does fall within the exception to the general prohibition against direct actions.

## II. Motion for Appointment of Receiver

### A. Standard of Review

"The appointment of a receiver is an extraordinary and drastic remedy to be exercised with great caution." *Crippin Printing Corp. v. Abel*, 441 N.E.2d 1002, 1005 (Ind.Ct.App.1982). The appointment of a receiver is a statutorily granted authority which must be strictly construed, and it cannot be sustained unless proper statutory grounds for the appointment are sufficiently shown. *Johnson v. LaPorte Bank & Trust Co.*, 470 N.E.2d 350, 355 (Ind.Ct.App.1984), *trans. denied, superseded in part by statute*. When reviewing an order on a motion to appoint a receiver, we do not reweigh the evidence, but construe

---

7. Specifically, the City alleged that the predecessor to Century was Studebaker's primary general liability insurer from at least October 13, 1949 through November 20, 1957; Zurich was Studebaker's primary general liability insurer from December 1, 1957 though December 1963; and London provided Studebaker with excessive liability insurance coverage at least as of October 30, 1958. Appellants' Appendix at 821.

8. We note that, although McGraw–Edison also filed a motion to dismiss the City's complaint against it for failure to state a claim upon which relief can be granted, it does not appear from the Chronological Case Summary that any ruling has been made on this motion, and even if a ruling has been made, it is not before us on appeal. Thus, McGraw–Edison remains a viable defendant.

the evidence and reasonable inferences in the trial court's favor, and we will reverse only for an abuse of discretion prejudicing the complaining party. *See KeyBank Nat'l Ass'n v. Michael*, 737 N.E.2d 834, 848 (Ind.Ct.App.2000).

### B. Denial of Appointment of Receiver

■ After the Insurers filed their motions to dismiss, the City filed a motion for appointment of receiver "to represent [Studebaker's] interests, particularly with respect to the pursuit of coverage under the company's insurance policies for the claims at issue in this matter." Appellants' Appendix at 903. The City averred that it has located an attorney willing to serve as receiver, and that if the Insurers do not pay for the receiver as part of their duty to defend, the City will pay. *Id.* at 904. The trial court denied this motion, finding that the City had failed to comply with the receivership statute because Studebaker is not a party to the action and has not appeared or been given notice of the motion as required by Indiana Code section 32–30–5–9. Further, the trial court found that the City failed to prove that appointment of a receiver was necessary. *See* Appellants' Appendix at 53–54. The City contends the trial court erred in denying its motion.

Indiana Code chapter 32–30–5 provides that a receiver may be appointed, *inter alia*, where a corporation has been dissolved, Ind.Code § 32–30–5–1(5)(A), or "where, in the discretion of the court, it may be necessary to secure ample justice to the parties." Ind.Code § 32–30–5–1(7). "Receivers may not be appointed in any case until the adverse party has appeared or has had reasonable notice of the application for the appointment, except upon sufficient cause shown by affidavit." Ind. Code § 32–30–5–9. Our supreme court has declared that the following three things must be shown before a receiver may be appointed: "(1) An emergency must be shown to exist such that the management and operation of a corporation must be taken over at once from those in control[,] (2) Irreparable damage and injury must result unless a receiver is appointed, and (3) There must be no adequate remedy otherwise available." *Lafayette Realty Corp. v. Moller*, 247 Ind. 433, 215 N.E.2d 859, 862 (Ind.1966).

We hold that the trial court did not err in denying the City's request to appoint a receiver for Studebaker. The "emergency" alleged by the City is "that hazardous substances and petroleum are present in the surface and subsurface soil and/or groundwater at, below and adjacent to the former Studebaker properties and it is expected to cost [between] $4.425 million and $9.170 million to clean this up." Appellants' Appendix at 907 (internal citations omitted). However, this contamination has allegedly existed for many years and the City itself has known about the contamination for well over ten years. That the City bought environmentally contaminated property and is now faced with the prospect of cleaning it up is not the type of "emergency" to which our supreme court was referring in *Lafayette Realty*. In that case, the court found no emergency existed because, although acts of overreaching and fraud against the majority shareholders, they were not of such magnitude as to immediately imperil the survival of the corporation and its operations. 215 N.E.2d at 862. The environment is already contaminated; Studebaker is not engaged in the current, active discharge of environmental hazards imperiling the property. The City has failed to show that an emergency exists in this case. Moreover, Studebaker has been dissolved as a corporation for over thirty years, and any claims by or against Studebaker have been barred for nearly as long. A receiver

could not act on Studebaker's behalf because there is no act which Studebaker itself could perform; thus, there is no injury. Finally, as noted above, the City has sued McGraw–Edison as the alleged successor to Studebaker, and if its claims are proven, the City will have an adequate remedy at law through McGraw–Edison. The trial court did not abuse its discretion in denying the City's motion.

### Conclusion

The City's declaratory judgment action is not a direct action against the Insurers and the trial court erred in dismissing the action. The trial court did not err, however, in denying the City's motion to appoint a receiver. Accordingly, the trial court's order regarding the receiver is affirmed, the trial court's orders granting the Insurers' motions to dismiss are reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

KIRSCH, C.J., and BAKER, J., concur.