**FIRST NATIONAL BANK & TRUST,**
Appellant–Defendant,

v.

**INDIANAPOLIS PUBLIC HOUSING AGENCY, Appellee–Plaintiff.**

No. 34A02–0610–CV–865.

Court of Appeals of Indiana.

April 13, 2007.

George W. Hopper, Jason R. Burke, Hopper Blackwell, P.C., Indianapolis, IN, Attorneys for Appellant.

Sydney L. Steele, Kurtis A. Marshall, Kroger Gardis & Regas, LLP, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, First National Bank & Trust (First National), appeals the trial court's Order denying its Motion to Dismiss and granting Appellee–Plaintiff's, Indianapolis Housing Authority (IHA), Motion for Partial Summary Judgment and Motion to Dismiss Counterclaim.

We affirm.

*ISSUES*

First National raises four issues on appeal which we consolidate and restate as the following two issues:

(1) Whether the trial court erred in granting partial summary judgment in favor of IHA; and

(2) Whether the trial court erred in dismissing First National's counterclaim.

## FACTS AND PROCEDURAL HISTORY[1]

In December of 1994, IHA (formerly known as the Indianapolis Housing Agency) entered into a construction contract with Aegean Construction Services, Inc. (Aegean) for rehabilitation of the Barton Annex Building in Indianapolis, Indiana. On or about May 24, 1995, First National and Aegean entered into a retainage agreement (Original Agreement) for escrow and distribution of the funds retained from progress payments to Aegean by IHA for the Barton rehabilitation project.

On March 10, 1997, Aegean filed a complaint against IHA seeking judgment for final payment of all the principal and interest held in the escrow account, alleging that all work due and owing to IHA was completed (Aegean Litigation). In response, IHA asserted that Aegean's work was merely substantially completed and counterclaimed unspecified damages pursuant to a liquidated damages clause contained in the construction contract. First National was not a party in this suit. Ruling on the parties' cross motions for summary judgment, the trial court found no genuine issue of material fact and determined that Aegean was entitled to final judgment as a matter of law. IHA's cross motion for summary judgment was denied. On January 19, 2001, IHA filed its notice of appeal but did not seek a stay of the Aegean Litigation. On February 8, 2001, First National, after being presented with a copy of the trial court's Order in the Aegean Litigation, paid the balance of the escrow account to Aegean.

Subsequently, on September 17, 2001, we determined on appeal that:

It is well settled that interest follows principal, or as the maxim has been often stated, "interest goes with the principal as the fruit with the tree." In the absence of an express agreement to the contrary, this rule controls. Interest represents the time value of money. Interest is compensation to a property owner for the loss of the use of his property.

Here, the retainage withheld from progress payments owed to Aegean and placed in escrow was Aegean's property, subject to completion of the work. Accordingly, Aegean is entitled to the retainage on completed work and the interest attributable to it.... Because [IHA] released all of the retainage in the escrow account except for a small sum for punch list items, Aegean is entitled to the interest on the amount of retainage released.

*Indianapolis Pub. Hous. Agency, v. Aegean Constr. Servs, Inc.*, 755 N.E.2d 237, 241 (Ind.Ct.App.2001) (internal citations omitted). Accordingly, we affirmed the trial court's Order in part, and reversed in part, concluding that a remand was necessary to determine whether Aegean had breached the construction contract and, if so, whether IHA incurred damages from the breach. *See id* at 242. In the event of damages, we ordered the trial court to allocate the balance retained in the escrow account between the parties accordingly, including principal and the interest attributable to it. *See id.* On February 22, 2003, Aegean stopped operating its business, was voluntarily dissolved, and ceased its corporate existence.

Thereafter, sometime during October of 2003, IHA contacted First National inquir-

---

1. We remind both parties that in accordance with Ind. Appellate Rule 46(A)(6) the Statement of Facts should "describe the facts relevant to the issues presented." Any legal argu-

ment based on the facts should be reserved for either the Summary of Argument or Argument section of the briefs.

ing about the amount of funds remaining in the escrow account and learned that all remaining escrowed funds had been distributed to Aegean in February of 2001. Consequently, on November 30, 2004, IHA commenced the instant action by filing a complaint against First National. Attached to its complaint was a copy of the Original Agreement. On August 29, 2005, First National filed its motion to dismiss IHA's complaint, claiming that the Original Agreement was not enforceable under the Indiana Lender Liability Act's Statute of Fraud provision. On October 21, 2005, IHA filed an amended complaint, attaching a retainage agreement which differed slightly from the Original Agreement (New Agreement), but similarly seeking recovery of the principal and interest held in the escrow account. Contemporaneously, IHA filed objections to First National's motion to dismiss and a cross-motion for partial summary judgment. On December 13, 2005, First National filed a counter-claim seeking indemnity based on language found in both the Original and New Agreement and on January 24, 2006, First National filed a response to IHA's motion for partial summary judgment.

In the meantime, on February 17, 2005, while the instant case was pending before the trial court, IHA proceeded with a bench trial against Aegean in the Aegean Litigation. Prior to trial, IHA served requests for admissions on the dissolved Aegean. Not receiving any answer, during trial on July 22, 2005, IHA tendered the admissions to the trial court and requested the trial court to enter findings of fact. The trial court entered findings of fact and conclusions of law, determining that "Aegean was not and is not entitled to any of the retainage or accumulated interest held by the escrow agent in February 2001." (Appellant's App. p. 297).

On February 16, 2006, the trial court in the instant case held a hearing on First National's motion for partial summary judgment and the motion to dismiss. In its Order, issued on August 28, 2006, the trial court determined in pertinent part:

17. The court declines to find that the retainage agreement is unenforceable under Indiana's Lender Liability Act. For the purpose of ruling on the motion to dismiss, the court assumes and finds as true that there was (and is) a written, fully executed, and enforceable retainage agreement between IHA, First National, and Aegean, identified as Exhibit A to the amended complaint.

18. The court further declines to find that [IHA's] claims are barred by the statute of limitation. The damages claimed by IHA are premised on a breach of contract theory and they arise out of its contractual relationship with First National. [IHA's] claims are governed by the limitations period for breach of written contract, per [Ind. Code § ] 34-11-2-11, which is ten (10) years after the cause of action accrues. [IHA's] complaint filed November 30, 2004 was filed well within that statutory period.

19. Based upon the foregoing, the court finds that [First National's] Motion to Dismiss for failure to state a claim should be and is denied.

20. IHA filed a [Cross-]Motion for Summary Judgment, seeking a judgment in its favor as to Count I, the breach of contract claim.

\* \* \*

23. The court concurs with [IHA] that the undisputed material facts of this case show that the IHA is entitled to summary judgment against First National on IHA's claim of breach of contract, namely First National's breach of

paragraph E of the retainage agreement, as a matter of law.

24. The retainage agreement provides at paragraph E the following:

E. The Escrow Agent [First National] shall pay over the net sum held by it Hereunder as follows:

1. to the Owner [IHA] in any manner directed by the owner.

2. to the contractor [Aegean] upon satisfactory completion of the project and the written authorization of the owner.

25. The terms of the agreement required that First National, as the escrow agent, obtain the written authorization or directive of IHA, the owner, before paying out proceeds of the escrow account.

26. The court declines to find that the [trial court's Order] of December 20, 2000 negated or overrode First National's duty under the contract to first seek authorization from IHA before disbursing the account's proceeds to Aegean. First National was not a party to the [Aegean Litigation], and it was not court ordered to disburse the funds.

27. First National breached its contractual obligation under the agreement on or about February 9, 2001 when it closed the escrow account and distributed the remaining escrowed funds to Aegean without written authorization of the IHA.

28. First National distributed the entire proceeds of the escrow account to Aegean of $72,402.82, which consisted of $20,519.15 principal and $51,883.67 accumulated interest.

29. First National argues that any loss to IHA is limited to the principal amount in the account as of February 9, 2001, as the [c]ourt of [a]ppeals in its opinion determined that the accumulated interest (at the time of the December 20,

2000 summary judgment) was due to Aegean. This is true, however, the [trial court] upon remand specifically found that the retainage principal and accumulated interest in escrow as of February 2001 was an offset for $72,402.80 of the $153,411.97 of the costs to IHA to fix or make repairs to Aegean's defective work and the liquidated damages for which Aegean is liable to the IHA.

30. As a result of First National's breach of the retainage agreement, IHA suffered a loss of $72,402.82, the amount of the funds distributed by First National to Aegean, and interest on that amount from February 9, 2001 until paid. Interest on the IHA's loss of $72,402.82 from February 9, 2001 at the statutory rate of 8% per annum is $27,342.48 as of December 1, 2005 and accrues thereafter at the rate of $15.87 per day.

31. Based upon the foregoing, the court finds and concludes that the designated evidentiary matter shows that there is no genuine issue of material fact and that [IHA] is entitled to judgment as a matter of law on Count I of the Amended Complaint in the judgment amount of $99,745.30 as of December 1, 2005 and interest from December 1, 2005 at the rate of $15.87 per day until entry of judgment, this day August 28th, 2006.

32. First National filed a Counterclaim for Indemnification against the IHA seeking a judgment against IHA in an amount sufficient to reimburse and indemnify First National for any losses, claims, damages, liabilities, and expenses incurred to defend IHA's amended complaint. IHA filed a Motion to Dismiss the counterclaim for failure to state a claim upon which relief can be granted per [Indiana] Trial Rule 12(B)(6).

33. Paragraph I of the retainage agreement provides that IHA (as the owner) and Aegean (as the contractor) agree to indemnify and hold harmless First National (as the escrow agent) against any and all losses, claims, damages, liabilities[,] and expenses which may be imposed or incurred in connection with the performance of its duties, provided that such costs or liabilities do not rise from negligent or wrongful performance of its duties under the agreement.

34. The court finds that IHA's duty to indemnify First National per the contract's terms applies only to third-party claims against First National, not to claims of IHA against [First National]. This interpretation is apparent from the last three (3) lines of paragraph I, which requires the escrow agent to first offer to permit IHA to undertake its defense with respect to such claims before undertaking costs or expenses. This provision clearly indicates the parties' intent that the duty to indemnify apply only to third-party claims, as it would produce an absurd result for IHA to be able to undertake the defense of its own claims against First National.

35. Further, the language of the indemnity clause excepts IHA's duty to indemnify if the costs or liabilities arise from First National's negligent or wrongful performance of its duties under the agreement. In its ruling herein, this court has determined that IHA is entitled to summary judgment as to Count I, due to First National's breach of contract. IHA has no duty to indemnify First National's liabilities or costs when it has been found that the wrongful performance of its duties under the agreement caused such liabilities and costs.

36. For the reason stated above, the court finds that the motion to dismiss the counterclaim should be and is granted, as the counterclaim fails to state a claim [on] which relief can be granted, as a matter of law.

37. Based upon the foregoing, the court herein denies [First National's] Motion to Dismiss the Amended Complaint; and grants [IHA's] Motion for [Partial] Summary Judgment as to Count I and the Motion to Dismiss the Counterclaim.

(Appellant's App. pp. 11–16).

First National now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Overall, First National disputes the trial court's grant of partial summary judgment in favor of IHA and its dismissal of First National's counterclaim. We will discuss each argument in turn.

### I. Motion for Partial Summary Judgment

With regard to the trial court's grant of partial summary judgment in favor of IHA, First National presents us with a three-fold allegation: (1) the trial court erred because it based its grant of partial summary judgment on the New Agreement which was never authenticated by IHA; (2) First National did not breach either the Original or New Agreement because the purpose of either contract was frustrated as a matter of law when the trial court in the Aegean Litigation ruled that IHA was no longer entitled to withhold funds from Aegean in the retainage account; and (3) the trial court erred in calculating IHA's damages pursuant to the court of appeals' ruling in the Aegean Litigation.

### A. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to

a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep.'t, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com*, 816 N.E.2d at 48. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

### B. *Authentication of the New Agreement*

First, First National contends that the trial court erred by grounding its partial summary judgment on the New Agreement. In support of its contention, First National maintains that IHA failed to designate any admissible evidence authenticating the New Agreement. Additionally, First National asserts that the New Agreement is unenforceable pursuant to the statute of frauds provision included in Indiana's Lender Liability Act.

Our review of the designated materials discloses that during the Aegean Litigation, IHA submitted the Original Agreement, evidencing a retainage agreement entered into between "the [IHA] (hereinafter called 'Owner'), Aegean Construction Services, Inc. (hereinafter called 'Contractor') and First National Bank, Kokomo, Indiana (hereinafter called 'Escrow Agent')" and signed by First National and Aegean. (Appellant's App. p. 67). In addition, IHA provided the Original Agreement as an Exhibit to its complaint for damages in the instant action. However, on October 21, 2005, when filing its amended complaint, IHA attached a New Agreement which differed slightly from the Original Agreement. This New Agreement was entered into by the same parties and on the same date as the Original Agreement. In fact, the only difference we can discern between both documents concerns the signatures, or lack thereof. Whereas the Original Agreement is signed by First National and Aegean, the New Agreement appears to be signed by all three parties, *i.e.*, First National, Aegean, and IHA. There are no distinctions in the material or substantive terms of the two documents.

To authenticate the New Agreement, IHA included two affidavits. In his affidavit Don Bievenour (Bievenour), Materials and Contract Manager of the IHA, acknowledged that IHA's signatory representative on the New Agreement was Martin D. Williams, the Deputy Executive Director of the IHA in May of 1995. Secondarily, Sydney L. Steele, IHA's attorney, represented in his affidavit that the New Agreement "is a copy of the fully executed [r]etainage [a]greement recently found in the records of the [IHA]. The undersigned was unaware of the existence

of this copy until recently, after the original complaint was filed in this action." (Appellant's App. p. 122). In response to IHA's authentication, First National submitted an affidavit from Maryann Redmon, testifying that "[o]n or about May 25, 1995, First National opened the [a]ccount consistent with the terms of a[r]etainage [a]ccount dated May 25, 1995, signed by First National and [Aegean]." (Appellant's App. p. 180). In its summary judgment, the trial court found the New Agreement to be the "written, fully executed, and enforceable retainage agreement between IHA, First National, and Aegean." (Appellant's App. p. 12).

[1] In determining a motion for summary judgment, a trial court can consider only material deemed appropriate by Indiana Trial Rule 56(E). *Duncan v. Duncan*, 764 N.E.2d 763, 766 (Ind.Ct.App. 2002), *reh'g denied, trans. denied.* Indiana Trial Rule 56(E) provides in relevant part that affidavits submitted in support of or in opposition to a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Further, "[s]worn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." T.R. 56(E). "The requirements of T.R. 56(E) are mandatory—therefore, a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits." *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind.Ct.App. 2005).

■ We are unpersuaded by First National's argument. The designated evidence clearly supports that both parties intended to enter into a retainage agreement. The Preamble of both the Original and New Agreement specifies in identical terms that the agreement was made and entered into between the IHA, Aegean, and First National. Both Agreements contain three signature lines, which correspond with the designated parties. Furthermore, we note that First National's submitted affidavit opposing IHA's authentication does not refute the parties' intention of entering into a three-party retainage agreement; but merely states that only First National and Aegean are signatories, which is in accordance with our findings of the Original Agreement. The affidavit does not affirmatively indicate that IHA is not a party.

■ Moreover, we find First National's contention based on Indiana's Lender Liability Act equally unavailing. Indiana's Lender Liability Act, codified in I.C. § 26–2–9 *et seq.*, is applicable to credit agreements, which are defined as agreements to:

(1) lend or forbear repayment of money, goods, or things in action;

(2) otherwise extend credit; or

(3) make any other financial accommodation.

I.C. § 26–2–9–1. Based on this statutory language, First National essentially argues that because IHA, as debtor, failed to sign the credit agreement, *i.e.*, the retainage agreement, the agreement is unenforceable as a matter of law pursuant to I.C. § 26–2–9–4.

While we refrain from deciding today whether a retainage agreement can be characterized as a credit agreement or First National can qualify as a creditor for purposes of Indiana's Lender Liability Act, we do not find IHA to be a debtor pursuant to I.C. § 26–2–9–3. As used in the Act, a debtor is a person who:

(1) obtains credit under a credit agreement with a creditor;

(2) seeks a credit agreement with a creditor; or

(3) owes money to a creditor.

I.C. § 26–2–9–3.

In the instant case, IHA and Aegean entered into a construction contract for rehabilitation work on the Barton Annex. In connection with this project, IHA, Aegean, and First National executed a retainage agreement for the escrow and distribution of the funds retained from progress payments to Aegean. Accordingly, as IHA, the owner of the project, made progress payments to Aegean, it was at the same time, depositing the partially retained funds in the escrow account, maintained by First National. In this light, IHA did not obtain credit or seek a credit. However, while IHA might have owed the retained funds to Aegean, Aegean cannot be characterized as a creditor[2] under the statute. At no point did IHA incur any financial obligations regarding the escrow account or its funds to First National, who maintained the escrow account free of charge. Thus, we consider Indiana's Lender Liability Act to be inapplicable to the situation at hand.

In sum, based on the evidence before us, we conclude that IHA properly designated admissible evidence authenticating the New Agreement. Therefore, we find that the trial court did not err by admitting the New Agreement.

### C. Breach of the New Agreement

■ Next, First National disputes the trial court's conclusion that it breached the terms of the New Agreement by paying Aegean pursuant to the trial court's Order in the Aegean Litigation and without first obtaining written authorization of IHA in accordance with the New Agreement's terms. In its contention, First National maintains that Indiana's trial rules propone that a pending appeal does not undermine the enforcement of a judgment. Furthermore, First National claims that by ruling that Aegean was entitled to the funds in the retainage account, the trial court in the Aegean Litigation effectively decided that the purpose of the account, as a temporary insurance to secure the completion of the work, was frustrated since IHA was no longer entitled to withhold funds from Aegean. Accordingly, as the purpose was frustrated, First National did not breach the New Agreement by closing the retainage account.

In response, IHA contends that because First National was not a party to the Aegean Litigation and not under a court order or garnishment to release the escrowed funds to Aegean, it breached the terms of the retainage agreement by distributing the funds to Aegean without prior approval. We agree.

**2.** Ind.Code § 26–2–9–2 defines creditor as:

(1) a bank, a savings bank, a trust company, a savings association, a credit union, an industrial loan and investment company, or any other financial institution regulated by any agency of the United States or any state, including a consumer finance institution licensed to make supervised or regulated loans under I.C. § 24–4.5;

(2) a person authorized to sell and service loans for the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, issue securities backed by the Government National Mortgage Association, make loans insured by the United States Department of Housing and Urban Development, make loans guaranteed by the United States Department of Veteran Affairs, or act as a correspondent of loans insured by the United States Department of Housing and Urban Development or guaranteed by the United States Department of Veteran Affairs; or

(3) an insurance company or its affiliates that extend credit under a credit agreement with a debtor.

The designated evidence reflects that on March 10, 1997, Aegean filed its complaint in the Aegean Litigation, seeking judgment against IHA for final payment of all escrowed principal and income held in the retainage account. On December 20, 2000, the trial court entered its summary judgment determining that there were no genuine issues of material fact and finding Aegean to be entitled to final judgment as a matter of law. Thereafter, on January 19, 2001, IHA filed its notice of appeal. The record is devoid of any designated evidence that IHA sought to stay enforcement of the trial court's Order pending appellate proceedings nor is there any stipulation in the record indicating that Aegean would forego execution of the Order pending IHA's appeal. On February 1, 2001, Aegean's counsel, by certified mail, notified First National of the trial court's December 20 Order and demanded the payment of all funds held in the retainage account in accordance with the Order. Eight days later, First National remitted the balance of the account to Aegean.

Next, on November 30, 2004, IHA commenced the instant case against First National. In its Order of August 28, 2006, the trial court determined that First National breached the terms of the escrow account and, as a result, IHA suffered a loss of $72,402.82.

However, as First National was not a party to the Aegean Litigation, it cannot be bound or rely on the judgments rendered therein. Clearly, if First National wanted to be bound by the trial court's order in the Aegean Litigation and gain the right to appeal, it should have intervened in accordance with Indiana's Trial Rules. Nevertheless, we find the case before us to be a new case, not a continuation of a previous proceeding involving the same parties. As such First National was still bound by the terms of the New Agreement with respect to IHA.

As mentioned above, the New Agreement provides, in pertinent part, that:

[First National] shall pay over the net sum held by it hereunder as follows:

1. to [IHA] in any manner directed by the [IHA].

2. to [Aegean] upon satisfactory completion of the project and the written authorization of [IHA].

(Appellant's App. pp. 79–80).

Based on the language of the New Agreement, First National should have obtained IHA's written authorization prior to releasing the account's content to Aegean. This was not done. We agree with the trial court that, as a result of First National's breach, IHA has suffered damages in the amount of $72,402.82, increased with the interest accrued thereon.

In conclusion, we caution that it is undeniable that, in this case, both First National and IHA took risks. By not requesting a stay pending appeal in the Aegean Litigation, IHA risked having the funds distributed and not being able to recover them even if they prevailed on appeal. By executing on the trial court's Order and releasing the retained funds during the pendency of the appeal, First National assumed the risk that they might have to repay the monies if Aegean would be unable to in the event IHA prevailed on appeal. Here, we conclude that the risk lies squarely with First National.

## II. Dismissal of First National's Counterclaim

[5] First National's second main argument revolves around the trial court's alleged error in granting IHA's motion to dismiss the bank's counterclaim for failure to state a claim. In its counterclaim, First National attempted to recover its attor-

neys' fees based on the indemnity language found in the New Agreement.

Our standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is *de novo. Cripe, Inc. v. Clark,* 834 N.E.2d 731, 733 (Ind.Ct. App.2005). A trial rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *City of South Bend v. Century Indem. Co.,* 821 N.E.2d 5, 9 (Ind.Ct.App. 2005). On review, we examine the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Id.* "We stand in the shoes of the trial court and must determine if the trial court erred in its application of the law." *Id.* The trial court's grant of a motion to dismiss is proper only if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* "In making this determination, we look only to the complaint and may not resort to any other evidence in the record." *Id.*

Here, First National asserts that based on the clear language of the New Agreement's indemnity clause, IHA is required to indemnify all costs resulting from any litigation arising from the retainage agreement. Thus, First National maintains, as the instant cause is a lawsuit arising from the retainage agreement, IHA must bear the costs, including First National's attorneys' fees. The indemnity clause states as follows:

> [IHA] and [Aegean], jointly and severally, hereby agree to indemnify and hold harmless [First National] against any and all losses, claims, damages, liabilities, and expenses, including reasonable costs of investigation and counsel fees and disbursements, which may be imposed upon [First National] or incurred by [First National] in connection with its appointment as [First National] hereunder, or the performance of its duties hereunder, including any litigation arising from the retainage agreement or involving the subject matter hereof or the securities deposited hereunder, provided that such cost or liabilities do not rise from the negligent or wrongful performance of its duties hereunder by [First National] shall not undertake any costs or expenses relating to claims until it shall have first offered to permit the indemnifying parties to undertake its defense with respect to such claims.

(Appellant's App. p. 80).

The construction of a written contract is a question of law. *Boonville Convalescent Center, Inc. v. Cloverleaf Healthcare Services, Inc.,* 834 N.E.2d 1116, 1121 (Ind.Ct. App.2005), *reh'g denied, trans. denied.* When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. *Id.* This requires that the contract be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. *Id.* When the language of a contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument. *Id.* In such a situation, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions. *Id.*

We agree with the trial court that the language of the indemnification clause is *clear and unambiguous.* It is apparent from the clause's last three lines, whereby the parties agreed that "[First National] shall not undertake any costs or expenses relating to claims until it shall have first offered to permit the indemnifying parties

to undertake its defense with respect to such claims," that the indemnification language only applies to third-party claims against First National, and not to claims of IHA against First National under the retainage agreement. (Appellant's App. p. 80). Accepting First National's interpretation would lead to the absurd result that IHA would have the contractual right to undertake the defense of its own claims against First National. Accordingly, we conclude that the trial court did not err in its application of the law. *City of South Bend*, 821 N.E.2d at 9. Therefore, we affirm the trial court's grant of IHA's motion to dismiss.

## CONCLUSION

Based on the foregoing, we hold that the trial court properly granted IHA's partial summary judgment, and properly dismissed First National's counterclaim.

Affirmed.

KIRSCH, J., and FRIEDLANDER, J., concur.